CITY OF JACKSONVILLE, a Municipal Corporation, C. FRANK WHITEHEAD as Mayor of the City of Jacksonville, Florida: T. F. McCALL, JR., as Police Commissioner of the City of Jacksonville, Florida: A. J. ROBERTS, as Chief of Police of the City of Jacksonville, Florida, v. CARRIE WILSON, joined by her husband, CHARLES WILSON.

27 So. (2nd) 108      June Term, 1946

August 2, 1946      Division B

*William M. Madison, Eli H. Fink* and *O. O. McCollum, Jr.,* for petitioners.

*Evan T. Evans,* for respondents.

SEBRING, J.:

Suit was instituted in the Circuit Court of Duval County by Carrie Wilson and Charles Wilson, her husband, to procure an injunction against the City of Jacksonville, its police department and its police officers on the ground that the city and its agencies named in the bill were unlawfully interfering with the plaintiffs in the conduct of their business, to the great injury of the plaintiffs.

It is alleged in the sworn bill of complaint that the plaintiff, Carrie Wilson, is the owner, operator and manager of the Lucky Start restaurant in Jacksonville, Florida; that she is the holder of the requisite licenses to sell beer and wines on the premises, and lawfully engages in such business; and that the plaintiff, Charles Wilson, aids and assists his wife in the operation of the said business. It is alleged further "That for a period of several months next last past, police officers of the Police Department of the City of Jacksonville, Duval County, Florida, have invaded the said premises . . . usually . . . in the night time . . . making a loud and noisy commotion and without the permission of the plaintiffs. That on such occasions . . . they have not been armed or provided with a warrant or other writ entitling them to so enter upon the said premises,

and on no occasion of any such visits have the said police officers had knowledge of any violation of the law occurring upon the said premises previous to their entry upon said premises and that the said visitations have been wholly illegal and in violation of the plaintiffs' rights. That said officers come upon said premises . . . and search the said premises, pretending to search for intoxicating liquors; that said police officers pretend that the plaintiff, Charles Wilson, is the owner and operator of said business and that the said plaintiff has been repeatedly arrested upon false, faked and pretended charges of violations of the liquor law upon said premises. That on the 16th day of March, A. D. 1946, such police officers so entered upon the said premises and finding no intoxicating liquor there, entered upon a barber shop nearby and claiming to find whiskey in said barber shop arrested the plaintiff upon the utterly trumped up, false and pretended charge that he was the owner of said liquor and violating the law in some manner in connection with said whiskey and plaintiff was arrested and taken into custody and carried to the police station where a charge of some sort involving said whiskey was placed against him; that similar utterly trumped up, faked, false and pretended charges have been so made against the said plaintiff repeatedly in the past and to such an extent that his constitutional rights as a citizen have been interfered with and he has never had any security in his said premises, always being under the apprehension that some police officer of said city may jerk him up upon some such faked, false and pretended charge. That on many of the raids made upon plaintiff's said premises patrons . . . have been placed under arrest and imprisoned in the City Jail merely because they were in and upon said premises; that the said conduct of the said police officers has continued from time to time and to such an extent as to ruin the plaintiffs' said business. That by reason of the premises, said business has acquired a reputation as being unsafe for patronage and that patrons who would otherwise patronize the said business have been deterred from doing so by reason of the hazard that they might be exposed to similar treatment by such police officers; that the said conduct of such police officers constitutes a

nuisance; that plaintiffs can never know when police officers may descend upon them at any hour of the day or night and an illegal entry made by them upon said premises."

Based upon these sworn allegations, the chancellor denied a motion to dismiss the bill of complaint interposed by the defendants, and entered a temporary restraining order without bond, commanding that the defendants, their agents, servants, employees and police officers "shall not enter upon the premises . . . except in the lawful and orderly discharge of your duties and you are hereby enjoined from molesting the plaintiffs, or either of them in the lawful conduct of the business . . . and from arresting or imprisoning the plaintiffs, or either of them, without due process of law and without proper legal authority, and from molesting, arresting or imprisoning the patrons and employees of said business, or either of them, without due process of law and without proper legal authority."

The defendants have brought this interlocutory certiorari proceeding to review the order so entered. We are of the view that the allegations of the bill of complaint fail to make out a case for injunctive relief, and that consequently the motion to dismiss the bill should have been granted.

The State Beverage Law prescribes that "Licensees, by the acceptance of their license agree that their place of business during business hours shall always be subject to be inspected and searched without search warrant by the . . . police officers. See Sec. 562.03 Florida Statutes, 1941, F.S.A. In view of this statute, it is not a ground for injunctive relief that the police officers of a municipality of this state enter upon the premises of a licensed purveyor of beer and wines at retail located within a municipality, to inspect the premises or conduct a search during business hours, without having first secured permission from the owner or having procured a search warrant or other writ for such purpose. Neither is it necessary that the officers have knowledge of violations of the law occurring on the premises before they can lawfully make such search or inspection. Furthermore, the fact that such a visitation may occur in the nighttime does not render a search made without warrant unlawful, provided, of course, the search is made

during business hours—as we must assume was the case in each instance delineated in the bill of complaint, there being no allegations in the pleading to the contrary.

The allegations of the bill of complaint to the effect that certain personal constitutional rights of the plaintiff, Charles Wilson, have been infringed on by reason of repeated arrests by the police officers for charged violations of the liquor laws of the state, both on and off the premises, does not afford a right to injunction, for it is well settled that a court of equity will not ordinarily relieve against criminal prosecutions no matter how often repeated; the arrested person being deemed to have an adequate remedy at law by habeas corpus or other proceeding. Stocks v. Lee, 144 Fla. 627, 198 So. 211. But even if this were not the general rule, the allegations of the bill on this phase of the controversy are not sufficiently clear and positive to warrant the issuance of an injunction. For while the bill of complaint charges that the plaintiff, Charles Wilson, has been repeatedly arrested by the police officers upon "false, faked, and pretended charges" of violating liquor laws upon and off the premises, and that charges of some sort have been lodged against him for such pretended violations, it utterly fails to disclose that when the arrests were made or the charges preferred the arresting officers were not acting in good faith or were impelled by improper motives, and that intoxicating liquors were not in fact found in the unlawful possession, custody or control of the said plaintiff, or that said plaintiff was not duly tried and convicted of such charges by a competent court having jurisdiction of such offenses. So in this particular, the bill of complaint is wholly insufficient.

This leaves for consideration the allegations of the bill to the effect that when the officers came upon the premises of the plaintiffs to conduct their searches they made a loud commotion, and arrested patrons of the place and imprisoned them "merely because they were in and on said premises" at the time, and that this conduct of the police officers has deterred patrons from patronizing the business of the plaintiffs because of fear of arrest.

Whether as a matter of law and under a proper set of facts well pleaded such conduct on the part of police officers of a

city if persisted in to the injury of the business of the plaintiffs, will justify the issuance of an injunction against the City, its major, its police department and its entire police force cannot properly be determined upon this hearing, as no proper predicate for dealing with the question is shown by the pleadings. It is well settled that an injunction will not be granted where it appears that the acts complained of have already been committed and there is no showing by the pleadings and proof that there is a reasonably well grounded probability that such course of conduct will continue in the future. The bill of complaint in the case at bar fails to make such a showing. Nowhere in the bill does it appear that the un-named police officers whose alleged past actions form the basis of the complaint, or other officers of the police department, will ever again enter the premises or arrest anyone therein unlawfully, or that there is a well grounded probability to believe that they will do so. It does not appear that at the time the arrests were made the officers were acting under any agreed concert of action to accomplish a purpose that has not already been completed, but is likely to be continued unless enjoined. It does not appear that police officers have threatened or have otherwise manifested an intention to return in the future "making a loud and noisy commotion," or otherwise to molest the premises, its patrons or its management. In short, the entire bill of complaint deals with events which have already happened, with no allegations of ultimate fact from which it may be reasonably inferred that such acts will recur at a future time.

It is argued by counsel for the respondent that whether or not the allegations of the bill of complaint are sufficient to authorize the issuance of the temporary restraining order without bond the order should stand, because under it the plaintiffs are protected from any unlawful trespasses that may occur in the future, while at the same time the petitioners are not restrained in the lawful exercise of power; the effect of the restraining order being merely to enjoin the city and its law agencies from molesting, arresting or imprisoning the plaintiffs and their patrons *unlawfully* and without due process of law. So long as the members of the police force act law-

fully, therefore,—so argues the respondent—the restraining order does not reach them and they have nothing to fear because of its existence. We think that this argument entirely misses the point contended for by the petitioner. It is the petitioners' contention that even though the restraining order entered by the chancellor may appear on its face to be utterly innocuous, because it enjoins only the commission of unlawful acts on the premises or against the management and patrons, its real effect is to transfer to the equity court general jurisdiction over all enforcement measures directed at the activities of the Lucky Start restaurant, its owner, employees and patrons, thereby placing the city and its law enforcement agencies in the uncertain and precarious position of being directly answerable to the equity court for every act done in the attempted exercise of the police power, and of justifying in contempt proceedings which may be set in motion at any time by the plaintiffs all attempts at law enforcement on the premises.

We are of the view that the contention of the petitioners is sound, and that petitioners should not be placed under such burden upon the vague, indefinite and uncertain allegations of the bill of complaint. It is questionable whether a court of equity should ever restrain or control the exercise of discretionary powers vested in municipal officers under the police power, for to do so amounts to an assumption by the court of the right to exercise the powers delegated only to the municipal corporation or its officers. See Pomeroy's Equity Jurisprudence, 4th Ed. Vol. 4, Sec. 1751; Spelling on Injunctions and other Extraordinary Remedies, 2nd Ed., Vol. 1, Sec. 628; 28 Am. Jur. p. 360, Injunctions, Sec. 171; 32 C. J. p. 261, Injunctions, Sec. 411; 43 C. J. S. p. 634, Injunctions, Sec. 111. Certainly, the court should not do so unless it is made clearly to appear that the officers are unlawfully abusing the discretion reposed in them and will likely continue doing so, to the irreparable injury of the plaintiffs, or are acting under an invalid statute or through a misconception of the law, or unless fraud, malice, bad faith or unfair dealing is involved and no adequate remedy at law is available to the injured person. Pohl Beauty School Inc. v. City of Miami, et al., 118 Fla. 664,

159 So. 789, and Lee, City Manager, et al., v. Beach Publishing Co., 127 Fla. 600, 173 So. 440, which are relied on by the respondents for justification of their bill of complaint and injunction, are not authority for a contrary conclusion. In those cases the court was not dealing with discretionary, but with ministerial powers; and it is quite clear from all the authorities that acts of a ministerial character will be freely enjoined, upon a proper state of facts.

From the conclusions reached it follows that a writ of certiorari should be granted quashing the order of the court from which the proceedings were taken, with directions that an order be entered granting the motion to dismiss the bill of complaint and denying the application for temporary restraining order; with leave to the plaintiffs to make seasonable application to the trial court for permission to file an amended bill of complaint.

It is so ordered.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.