115 So.2d 547 (1959)
CITY OF MIAMI, a municipal corporation of the State of Florida, Appellant,
v.
Oise KETON, a/k/a Osie Keton, Gene C. Russo, and others not named but made parties as members of a class, Appellees.
Supreme Court of Florida.
November 4, 1959.
Rehearing Denied December 4, 1959.
*548 William L. Pallot, Milton M. Ferrell and J.M. Flowers, Miami, for appellant.
J. Lewis Hall of Hall, Hartwell & Douglass, Tallahassee, Harry Housen and John H. Gunn, Miami, for appellees.
TERRELL, Justice.
November 6, 1956, the Florida electorate approved Section 11, Article VIII of the Constitution, F.S.A., authorizing Dade County to set up a metropolitan government with power to repeal any general or special act applicable solely to that county. Pursuant to said Section 11, Article VIII, a metropolitan charter was adopted which made the Board of County Commissioners the governing body of Dade County and authorized it by ordinance to repeal any act of the legislature applicable solely to Dade County. The metropolitan charter also created a metropolitan court with jurisdiction to adjudicate any case arising under any ordinance of Dade County.
Chapter 10847, Acts of 1925, better known as the Charter of the City of Miami, established a municipal court with jurisdiction to try all cases arising under the ordinances of the city and with power to regulate traffic and police power arising therefrom. Sections 3(b), 3(y), 3(z), 3(aa) and 59 thereof.
The Board of County Commissioners of Dade County, hereinafter referred to as Commissioners, also enacted Ordinance 57-13, effective October 5, 1957, defining ways and means for conduct of the metropolitan court, established by the metropolitan charter. The latter ordinance also repealed all municipal charters and ordinances in conflict therewith. At the time Ordinance 57-13 became effective, there was no ordinance in effect regulating traffic in Dade County so the metropolitan court had no jurisdiction to regulate traffic in said county. September 20, 1957, Dade County enacted Ordinance 57-12 regulating traffic throughout the county, which nullified all municipal ordinances attempting to regulate traffic in said county and by subsequent amendment established the effective date as March 1, 1958. This ordinance provided that it supersede and nullify all "municipal ordinances and codes and any and all County ordinances or codes relative to *549 the regulation and enforcement of traffic." It appears that the City of Miami has continuously tried violations of city traffic ordinances in the city court before and after March 1, 1958.
Appellee Oise Keton was convicted in the city court for driving an automobile while under the influence of intoxicating beverages. He paid a fine of $50, without objection, raised no question as to jurisdiction of the court and did not appeal from the judgment imposed on him. Appellee Gene C. Russo was given a summons for violating a city traffic ordinance. He paid the city $15 to avoid a trial in city court. The payment of both said fines and all proceedings leading to them took place after March 1, 1958, the effective date of Dade County Ordinance 57-12 regulating traffic in the county.
This suit was brought as a class suit under Florida Rules of Civil Procedure, rule 3.6, 31 F.S.A. and for a declaratory decree as authorized by Chapter 87, Florida Statutes, F.S.A., by Keton and Russo in behalf of themselves and others in like situation who paid fines to the city for violation of city traffic ordinances after March 1, 1958, to recover or require return of said fines. It is alleged that there are approximately 190,000 persons per annum who pay fixed fines as a result of summons without the necessity of going to court or being tried, and 50,000 persons per annum who are tried, convicted and pay fines. Keton and Russo contend that the charter power of the city to regulate traffic as well as its ordinances for that purpose were repealed as of March 1, 1958, by County Ordinances 57-12 and 57-13, and being so the city court was devoid of jurisdiction to try cases or impose a fine on appellees.
The city contends on the other hand that its charter power to regulate traffic has never been repealed, that its traffic ordinances have not been repealed, that the claims of appellees, or either of them, cannot be enforced in equity by class suit, that said claims of appellees sound in tort, and a 60 day notice of said claims as required by Section 93 of the city charter is a prerequisite to maintain said suit, and that the respective claims of appellees are based on acts of the city in performance of its governmental functions as distinguished from its proprietary functions, all of which were raised by motion to dismiss as well as answer to the complaint.
On the issues so made, the chancellor held that the charter power of the city and its ordinances to regulate traffic were repealed by Ordinances 57-13 and 57-12 of Dade County and that appellees, including others in the same class, were entitled to return of the fines paid by them. Appellant was enjoined from collecting other fines and was ordered to account for fines collected by it after March 1, 1958. Jurisdiction was retained to enter such orders as were essential to enforce the decree. This appeal is from the decree so entered.
Points One, Two, Three and Four have to do with whether or not Dade County Ordinances 57-13 and 57-12 repealed all municipal charters and ordinances, and all special and general laws applicable only to Dade County.
Counsel agree that these four points may be treated together, but they are at variance as to interpretation of their import. In defense of its contention, appellant says that on October 5, 1957, there were no Dade County traffic ordinances effective in Miami, consequently the metropolitan court had no jurisdiction to try violations of such ordinances. Appellant further points out that there were in effect at the time city traffic ordinances and a city court created by the legislature with jurisdiction to try violations of such ordinances. It is further pointed out that since Metropolitan Ordinance 57-13, effective October 5, 1957, repealed all special and general laws and all municipal ordinances in conflict therewith but contained nothing relating to traffic and since there were no metropolitan traffic ordinances in effect at the time, the said *550 city traffic ordinance could not be in conflict with Ordinance 57-13, neither could it be in conflict with that part of the City Charter of Miami granting the city court jurisdiction to try violations of city ordinances.
Appellant also points out that Ordinance 57-12 was a comprehensive and complete traffic ordinance regulating and controlling traffic throughout Dade County, incorporated and unincorporated areas, and that it did not by express terms repeal any general or special act relating to Dade County. Appellant recognizes the power of Dade County under the Constitution, Section 11(1) (c), Article VIII, to abolish municipalities and to transfer all their powers to the Board of County Commissioners, Section 11(1) (d), but contends that since all powers of appellant are derived through special act of the legislature, a transfer of such powers would necessarily require repeal of its charter. For all of which it is contended that it was the intention of Dade County to modify or repeal only that part of the Charter of Miami authorizing it to try violations of traffic ordinances and not to repeal the entire charter.
In conclusion, appellant points out that it does not question the power of Dade County under the metropolitan charter to repeal any part of the city charter, but it contends that such repeal must be accomplished in the manner provided by Section 1.02(b), Metropolitan Charter, and Section 16, Article III of the Constitution, none of which has been complied with. For these and other alleged good and sufficient reasons, it is contended that the ordinance in question is ineffective to repeal the traffic ordinances of the city or the charter powers thereof.
Because of which appellant says (1) the chancellor erred in holding that Dade County Ordinance 57-12 repealed and suspended all traffic ordinances of the City of Miami; (2) the chancellor erred in holding that all traffic ordinances of the City of Miami were null and void for lack of charter power to pass them, and (3) the chancellor erred in holding that the fines collected by the City of Miami were collected without authority of law because the city had no effective traffic ordinance or no court with jurisdiction to try violations of traffic ordinances at the time said fines were paid to appellant.
Appellees meet appellant's contention with the counter proffer that Dade County not only had the power by ordinance to repeal any municipal charter or ordinance, any general or special act of the legislature, applicable only to Dade County, but that by enacting Ordinances 57-12 and 57-13, Dade County did effectively and constitutionally repeal all the municipal charters and ordinances, including general and special acts applicable to Dade County. Appellees further contend that Section 11(1) (f), Article VIII of the Constitution [Dade County Home Rule Amendment], vests such power in Dade County by the following usage:
"* * * such charter may create new courts and judges and clerks thereof with jurisdiction to try all offenses against ordinances passed by the Board of County Commissioners of Dade County and none of the other courts provided for by this Constitution or by general law shall have original jurisdiction to try such offenses * * *."
The applicable provisions of the Home Rule Charter approved by the electors of Dade County pursuant to the above amendment are as follows:
"Section 6.01
"A. A Court is hereby established, the name of which shall be the Metropolitan Court. There shall be as many judges of this Court as the Board shall deem necessary to administer promptly and expeditiously the business of the Court.
"Section 6.02
"A. The Court shall have jurisdiction to try all cases arising under ordinances adopted by the Board."
*551 The Traffic Ordinance of Dade County, being 57-12, promulgated by the Board of County Commissioners pursuant to charter is as follows:
"Section 26.01 It is provided that this ordinance shall pertain to all violations hereof within Dade County, Florida, and supersedes and nullifies any and all Municipal ordinances or codes and any and all County ordinances or codes relative to the regulation and enforcement of traffic.
"Section 26.02 The violation of any provision hereof shall be triable in the Metropolitan Court, which shall have exclusive original jurisdiction thereof."
The ordinance of Dade County creating the metropolitan court [Ordinance 57-13], promulgated by the Board of County Commissioners under the same authority, provides:
"Section 3.02 Jurisdiction The Court shall have exclusive jurisdiction to try all cases arising under ordinances adopted by the commission. * * *"
"Section 3.26 Repeal All county and municipal ordinances, county and municipal resolutions, municipal charters, special laws applying to this county and general laws applying only to this county or any general law which this commission is specifically authorized by the Constitution to supersede, nullify or amend, or any part of any such ordinance, resolution, charter or law in conflict with any provision contained herein is hereby repealed."
It is our view that this question is answered contrary to the contention of appellant in Miami Shores Village v. Cowart, Fla. 1958, 108 So.2d 468. It further appears from all that has been said that the ordinances in question were within the power of the Board of County Commissioners to enact, that as to traffic regulations said ordinances superseded all municipal charters and ordinances in conflict therewith and divested municipal courts in Dade County of all jurisdiction to entertain, adjudicate or punish those charged with traffic violations as of March 1, 1958.
The fifth point urged is stated as follows: Should the complaint have been dismissed for not alleging facts necessary to legally maintain a class suit?
Appellant says that the complaint alleges two classes of plaintiffs, one represented by appellee Keton, consisting of 50,000 persons who were tried, convicted and paid fines, and the other represented by appellee Russo, consisting of 190,000 persons who paid fines without going to court. Rule 3.6, Florida Rules of Civil Procedure, authorizes class suits, "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."
The rule seems to be universal that where one makes a payment of any sum under a claim of right with knowledge of the facts such a payment is voluntary and cannot be recovered. Blumenthal v. United States, D.C.S.D.Cal. 1925, 4 F.2d 808; Deppe v. Lufkin, 1 Cir., 1940, 116 F.2d 483; 40 Am.Jur., Payment, § 155, citing many cases. See also 40 Am.Jur., Payment, § 220, citing cases holding that the same rule is applicable when fines are paid under mistake of law with knowledge of the facts and especially where there is a right to appeal. There is no showing here that any of the payments were made under protest, that the offenses provoking the fines were not committed, how many of them are barred by the statute of limitations or to what extent and how many of them or how much the city would now be embarrassed to contest them.
Now there is considerable sparring and frog hair splitting directed to the point of whether the Keton class or the Russo class, or either of them, is covered by the general rule just announced, whether or not *552 criminal cases are without the pale and controlled by different principles exempting them from provisions of Rule 3,6, Florida Rules of Civil Procedure, and lastly, whether or not the municipal courts of Dade County or the City of Miami or the courts created by the metropolitan traffic ordinance have jurisdiction.
It is pointed out, however, that the Keton and Russo cases together number approximately a quarter of a million cases and to require each claimant to institute a separate action to recover his claim would create chaos in the courts of Dade County, would impose a useless and insufferable burden on said courts and would result in an unusual burden on the city and its taxpayers in the way of court costs and filing fees. It is pointed out that such fees, without additional costs would approximate $1,750,000. It is just such a situation that Rule 3.6 authorizing class suits was designed to prevent and we think it is adequate to accomplish that purpose in the case at bar.
The sixth point proffered by the parties hereto is as follows:
Was the defense of appellant, that appellees did not give appellant the sixty (60) day notice of claim required by Section 93 of the charter of appellant, a valid defense, requiring dismissal of the complaint, and requiring a denial of the motion to strike such defense?
The answer to this question is concluded by our interpretation of Section 93, City of Miami Ordinance, which among other things provides that "* * * no suits * * * against the city for damages arising out of tort * * * shall be maintained without furnishing * * * sixty day notice of claim."
In Olivier v. St. Petersburg, Fla. 1953, 65 So.2d 71, opinion by Mr. Justice Drew, we held that the purpose of this act is to notify the city that a person has been injured so that the city will have reasonable opportunity to investigate the matter, determine the question of liability and effectuate settlement, if one is justified, thus avoiding litigation and the incident expense. We have generally limited such action to tort and have held directly that it did not apply to actions on contract, whether expressed or implied. Doyle v. Coral Gables, 1947, 159 Fla. 802, 33 So.2d 41. There was accordingly no merit to the motion to dismiss the complaint for lack of notice of the claim.
Point seven proffered by appellant is as follows:
Did the facts of the claim of appellees, based upon acts done by appellant in the performance of its governmental functions as distinguished from its proprietary functions, create any legal liability upon the part of appellant?
The claim of appellees is predicated on the enforcement of a city traffic ordinance alleged to be void including the acts of a policeman and court exercised in its enforcement. It is contended that the acts of the policeman and the city court were all done in the exercise of purely governmental functions conferred on the city by the legislature. Elrod v. Daytona Beach, 1938, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, and Hargrove v. Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, are relied on to support appellant's conclusion.
It clearly appears that appellant committed error in that it pitched the question from the wrong premise. It treats the present action as one sounding in tort to recover damages against the city while in fact it seeks restitution of fines and costs illegally held and imposed by a court devoid of jurisdiction to assess them. The action is not one sounding in tort though it involves a claim for damages against the city. If this had been a suit sounding in tort for false arrest, the Elrod case might have been appropriately urged, but since we are confronted with a suit to recover funds alleged to have been wrongfully exacted and illegally *553 held, the Elrod case is not in point. The Hargrove case is likewise beside the question. Under the reasoning and philosophy of the Elrod case the question that forces itself in the case at bar has to do with the propriety of the action taken to recover the funds claimed by the class plaintiffs.
In the matter of recovery of fines, illegally paid pursuant to a void judgment entered by a court lacking jurisdiction to try the case and impose such fines, appellees direct our attention to the following: Clay v. Drake, 1942, 66 Ga. App. 544, 18 S.E.2d 516; Rose v. Mayor of Thunderbolt, 1954, 89 Ga. App. 599, 80 S.E.2d 725; United States v. Rothstein, 7 Cir., 1911, 187 F. 268. We have examined these cases carefully but account of the conclusion we have reached here, we are not convinced that they are pertinent.
The last point urged by appellant is as follows:
As a matter of law, was any one of the numerous appellees entitled to the injunction or accounting ordered against the city, appellant?
In support of this contention, appellant says the court erred in denying its motion to dismiss the complaint for not alleging facts entitling appellees to an injunction or an accounting, it being contended, (1) no appellee has any interest in fines which may be collected by the city in the future from those not parties to the suit; (2) such fines could not affect any property or personal right of any appellee in any manner; (3) such fines in the future against those not parties to the suit would benefit appellees in that they would go into the general fund of the city to benefit the public. The following cases are relied on to support this contention: Jacksonville v. Wilson, 1946, 157 Fla. 838, 27 So.2d 108; Bryan v. Miami, Fla. 1951, 56 So.2d 924; Pirtle v. Titusville, Fla.App. 1958, 101 So.2d 397; Holton & Co. v. Hull, 1939, 140 Fla. 687, 192 So. 229, 3 A.L.R.2d 1321 and 1377 note; Manning v. Clark, Fla. 1951, 56 So.2d 521; Charles Sales Corp. v. Rovenger, Fla. 1956, 88 So.2d 551, and Gladman v. Hallam, Fla.App. 1958, 104 So.2d 46.
We think the chancellor properly disposed of this question but account of the view we take it becomes immaterial. The suit was for a declaratory decree as authorized by Chapter 87, Florida Statutes, F.S.A., the appropriate method for testing the validity of the Miami City Traffic Ordinance and the authority of the Miami Municipal courts to assume jurisdiction over traffic cases. Brown v. Foley, 1947, 158 Fla. 734, 29 So.2d 870, and Glackman v. Miami Beach, 1947, 159 Fla. 376, 31 So.2d 393. See also Rule 3.6, Florida Rules of Civil Procedure. Because of a common interest in the underlying principles involved, appellees constitute a class eligible to bring such a suit. Each person who is arrested and convicted and pays a fine to the City of Miami becomes a member of the class.
Since equitable jurisdiction has been properly invoked, it follows that once having taken jurisdiction, a court of equity will proceed to the determination of all matters properly presented, and grant full relief and retain jurisdiction for purpose of doing complete justice as between the parties. Tremont Co. v. Paasche, Fla. 1955, 81 So.2d 489; Lake Worth v. First National Bank in Palm Beach, Fla. 1957, 93 So.2d 49; Miller v. Rolfe, Fla.App. 1957, 97 So.2d 132.
It is accordingly our view that the chancellor correctly held that this suit was properly brought as a class suit as authorized by Rule 3.6, Florida Rules of Civil Procedure; that when Dade County adopted Ordinance 57.12 relating to traffic throughout the county, all municipal ordinances and codes and all county ordinances and codes relating to the regulation and enforcement of traffic were thereby repealed from and after the effective date thereof. It is our view, however, that the chancellor was in error in holding that appellees and those in like situation who were convicted and required to pay fines to the city after Ordinance 57.12 was enacted may now have return of the amounts so paid to *554 the city. It is our view that said defendants are covered by the general rule stated herein under which and for the reasons therein stated they are barred from recovering said amounts, or any part thereof. In all other respects the decree appealed from is affirmed.
It results that the decree appealed from is affirmed in part and reversed in part.
THOMAS, C.J., and HOBSON, ROBERTS and O'CONNELL, JJ., concur.