238 So.2d 608 (1970)
Reo U. HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 39143.
Supreme Court of Florida.
July 1, 1970.
Rehearing Denied September 14, 1970.
*609 J. Edward Worton, Key West, and Kenneth L. Ryskamp, of Bolles, Goodwin, Ryskamp & Ware, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Roger W. Foote, Asst. Atty. Gen., for appellee.
DREW, Justice.
Appellant, defendant below, was tried in the Criminal Court of Record for Monroe County and found guilty of landing shrimp without a permit in violation of Section 370.151(6), Florida Statutes 1967, F.S.A.[1] At the outset of the trial the court denied defendant's motion to suppress evidence in the form of the shrimp cargo taken without a permit. The motion was made on the basis that the requirements of the Florida Board of Conservation prior to issuance of a shrimp-landing permit, wherein the applicant for a permit gives blanket permission to conservation officers to board his vessel at any time with or without cause, violate the provisions of Article I, Section 12 of the Florida Constitution  1968 Revision, F.S.A.[2] and the Fourth *610 Amendment to the United States Constitution prohibiting unreasonable searches and seizures. Defendant argued at the trial and before this Court that he refused to submit an application to the State Board of Conservation for a shrimping permit because by making application he would waive his right to insist upon a search warrant or a search of his vessel based upon probable cause as guaranteed by the Florida and federal constitutions. The statement appearing on the application form for such a permit to which appellant objects reads as follows:
"In compliance with Chapter 65-343, as passed by the Florida Legislature, I agree to permit any agent of the Florida State Board of Conservation to board my vessel at any time. I also understand that failure to keep the permit on board the vessel at all times shall be cause for revocation of this permit, as shall any other infraction of Chapter 65-343. * * *"
The issue before us, then, is whether the applicant for a shrimping permit gives up a constitutional right to protection against unreasonable searches and seizures of his vessel by appearance of the above-quoted statement upon the application. We have jurisdiction because the trial court has construed controlling provisions of both the Florida and federal constitutions.[3]
Defendant refused to execute the application form for a shrimping permit because he objected to the provision which purports to allow any agent of the Florida State Board of Conservation to board his vessel at any time. His position is that not only is the application provision unconstitutional, but that it goes beyond all statutory authority given to the Director of the Board of Conservation to require an applicant to furnish "such information as may be deemed pertinent to the best interests of salt water conservation."[4]
We conclude that the permission to board appearing on the application blank is within the regulatory power of the Director of Conservation and does not require an applicant for a shrimping permit to give up his rights under the Florida and federal constitutions to protection against unreasonable searches and seizures.
This Court established long ago that protection and regulation of shrimping and fishing within the state's waters is a *611 valid exercise of a sovereign's police powers.[5] The duty to develop and conserve natural salt water resources such as shrimp and fish has been delegated to the Board of Conservation by Chapter 370 of the Florida Statutes, F.S.A. The Legislature has recognized that the supply of shrimp should be conserved and that the shrimp industry is valuable to the economy of Florida and deserves protection.[6] Shrimping is a gainful activity which may be subjected to certain reasonable limitations and conditions without violating any constitutional rights of those subject to the regulations.
The applicant for a shrimping permit by the express language of the provision objectionable to defendant agrees to permit a conservation agent to board his vessel at any time, as opposed to agreeing to a search of the vessel and seizure of any illegally obtained cargo. At oral argument the state's position was clarified: permission to board is required solely to allow agents to determine whether the required permit is being carried on the vessel. According to the State, the application statement was intended to put the applicant on notice of his obligation to keep the permit aboard the vessel at all times, and of the fact that under Section 370.021(5) the director or any conservation officer possesses the authority to board, inspect and search any boat without obtaining a search warrant. This authority to search and inspect without a warrant is limited by the statute to instances where the director or officer has probable cause to believe that a conservation rule or law is being violated.[7]
The construction urged by the state is a reasonable one and one which we accept pursuant to this Court's obligation to uphold the constitutionality of a legislative enactment or administrative rule pursuant thereto if the same is capable of an interpretation that does not violate constitutional guarantees. Permission for conservation officers to board a vessel at any time for the limited purpose of ascertaining whether the necessary permit is being carried is not an unreasonable burden to impose upon the shrimping business. The permission to board must stop there, however. Any search or inspection of the boat without a search warrant must be accomplished within the framework of probable cause described in Section 370.021(5) set forth in footnote 7, supra. What situations might constitute probable cause for a further inspection or search under that statute will *612 depend upon the circumstances in each individual case.[8]
The right to board a vessel at any time for the purpose of ascertaining the presence of a shrimping license is closely akin to the provisions in our motor vehicle laws requiring the operator of a motor vehicle to obtain a drivers license, to possess that license at all times while operating the vehicle, and to display it upon demand of any officer of the law.[9] We have upheld the right of a municipality to set up a road block for the purpose of checking drivers' licenses in the case of City of Miami v. Aronovitz,[10] wherein we stated:
"In Thornhill v. Kirkman, Fla. 1953, 62 So.2d 740, we aligned this Court with those which hold that acquisition of a driver's license is a reasonable requirement and that the privilege granted by it remains subject to suspension or revocation for cause. The owner of such a license exercises the privilege granted by it subject to reasonable regulations in the use of the highways common to all citizens. These requirements do not disregard the constitutional guaranties upon which the instant appellee relies. We are committed to the view that so long as the regulations themselves are reasonable and are reasonably executed in the interest of the public good, the courts should not interfere. Thornhill v. Kirkman, supra; Smith v. City of Gainesville, Fla. 1957, 93 So.2d 105."
We emphasize that we are not here passing upon the validity of a search of a vessel which has been intercepted and boarded merely for the purpose of examining the shrimping permit, but in weighing the circumstances under which boardings of this nature are authorized it should be borne in mind that the constitutional prohibition is against unreasonable searches and seizures. See generally, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), adopted as statute law of the State of Florida and appearing now as Fla. Stat. § 933.19 (1967), F.S.A.
Defendant relies heavily upon the United States Supreme Court decisions in Camara v. Municipal Court,[11] and See v. Seattle.[12] The Camara case stands for the proposition that the Fourth Amendment to the United States Constitution bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his personal residence. In Camara, the Court extended the prohibition to commercial structures and held that administrative entry without consent upon portions of commercial premises not open to the public may only be compelled through prosecutional physical force within the framework of a warrant procedure. The Camara and See cases represent a refinement in applying Fourth Amendment safeguards to state action first sanctioned in Ker v. California,[13] and in applying protection against unreasonable searches and seizures to commercial premises as established in Go-Bart Importing Co. v. United States.[14]
Defendant's defense, however, is directed toward the unconstitutionality of the application for a shrimping permit, which permit, as we have interpreted it, requires the applicant to permit boarding of the vessel  and nothing further. The search and seizure cases of Camara and See are not directly applicable to the issue raised by defendant. Application and interpretation *613 of the principles in those cases and in the sequel case of Colonnade Catering Corp. v. United States[15] must await appearance of an appropriate case.[16]
In addition to our approval of procedures whereby law enforcement officers may stop and request to see a driver's license to operate his vehicle,[17] we have upheld against constitutional attack statutory authority for state agents to inspect, by entering the premises if necessary, a regulated business or activity as a condition attached to obtaining and retaining a license to carry on that particular business or activity. The right to enter and inspect without notice or warrant has been established where entrance and inspection has been for the purpose of ascertaining compliance with statutes and rules relating to (1) cleanliness, health and sanitation enforced by the Hotel and Restaurant Commission;[18] (2) conditions of migrant labor camps;[19] (3) enforcement of game and fresh water fish laws;[20] (4) control and taxation of cigarettes;[21] and (5) enforcement of beverage laws.[22]
Inspections allowed in licensing and regulation of businesses are generally performed through warrantless searches made only upon probable cause. Our decisions upholding these statutes are search and seizure cases for the most part which we refer to not because we reach the basic search and seizure question in this cause, but because the general discussions contained therein place into proper context our approval today of a requirement that one applying for a shrimping permit must allow boarding of his vessel for the sole purpose of determining whether his vessel is carrying the proper shrimping permit.
Having determined that an applicant for a shrimping permit is not required to relinquish the constitutionally guaranteed protection against unreasonable searches and seizures incident to practice of his trade, it follows that defendant's objection to filing an application for a shrimping permit fails. His conviction for shrimping without a permit must be affirmed.
Affirmed.
It is so ordered.
ERVIN, C.J., and ROBERTS, CARLTON and BOYD, JJ., concur.
NOTES
[1] "It shall be unlawful to land or attempt to land any shrimp in the territorial waters or state of Florida without a permit issued by the director of conservation. Such permit shall be issued without charge. The director of conservation may revoke such landing permit upon a violation of any portion of this section. Such revocation of permit by the director may be reviewed by the board of conservation and the decision of the board may be reviewed by the circuit court under the procedure prescribed for appeals in Florida Statutes and the Florida appellate rules." Fla. Stat. § 370.151(6) (1967), F.S.A.
[2] "Searches and seizures  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, things or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence." Fla. Const. art. I, § 12 (1968 Revision).
[3] Fla. Const. art. V, § 4(2) (1885). "Jurisdiction. Appeals from trial courts may be taken directly to the supreme court, as a matter of right * * * from final judgments or decrees * * * construing a controlling provision of the Florida or federal constitution * * *."
[4] Fla. Stat. § 370.15(5) (a) (1967), F.S.A.:

"Shrimp fishing; permits; penalty. 
"(a) All persons, firms and corporations desiring to fish for commercial or bait shrimp within areas in which trawling is permitted shall first apply to the director of conservation for a permit. Such applications shall be made on forms to be supplied by the director and which shall require the applicant to furnish such information as may be deemed pertinent to the best interests of salt water conservation. Provided, that the director may refuse to grant permit when it shall be apparent that the best interests of salt water conservation will be served by such denial. Provided further, that permits so granted shall remain on board at all times and will be subject to immediate revocation upon conviction for violation of this section or when it shall be apparent that the best interests of salt water conservation will be served by such action. Provided further, that due to the varied habitats and types of bottoms and hydrographic conditions embraced by the open fishing area, the director shall have the authority to specify and regulate the types of gear that may be used in the different sections of the open areas [emphasis added]."
[5] Ex parte Powell, 70 Fla. 363, 70 So. 392 (1915); State ex rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730 (Fla. 1938); Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892 (Fla. 1944); and Alford v. Finch, 155 So.2d 790 (Fla. 1963).
[6] Fla. Stat. § 370.151(1) (1967), F.S.A. "Tortugas shrimp beds; closed areas: permits; penalties.  (1) It is the intention of the legislature of this state that action should be taken to conserve the supply of shrimp in the large shrimp bed which lies in the vicinity of the island of Dry Tortugas in the Florida Keys, and which furnishes more than fifty per cent of the shrimp in waters adjacent to the coast of Florida. It is further the sense of this legislature that the shrimp industry is a valuable industry to the economy of this state and that it deserves adequate protection." [Emphasis added.]
[7] Fla. Stat. § 370.021(5) (1967), F.S.A.:

* * *
"All conservation officers, together with the director, are constituted police officers with power to make arrests for violations of the laws of this state and the rules and regulations of the board under their jurisdiction. * * * The director or the conservation officers may enter upon any land or waters of the state for performance of their lawful duties * * *. The director or any of the conservation officers shall have the authority, without warrant, to board, inspect and search any boat, * * * or vehicle engaged in transporting any fish or fishery products. Such authority to search and inspect without a search warrant is limited to those cases where the director or the officers have reason to believe that fish or any salt water products are taken or kept for sale, barter, transportation or other purposes in violation of laws or rules promulgated under this law. * * *" Emphasis added.]
[8] See Collins v. State, 65 So.2d 61 (Fla. 1953), and Haile v. Gardner, 82 Fla. 355, 91 So. 376 (1921).
[9] Fla. Stat. §§ 322.03 and 322.15 (1967), F.S.A.
[10] 114 So.2d 784, 787 (Fla. 1959).
[11] 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
[12] 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).
[13] 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).
[14] 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).
[15] 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).
[16] In Colonnade the Court notes that in See it reserved decision on administrative inspections relating to licensed and regulated activities. The Court in Colonnade recognized an exception to the general rule laid down in See when powers of inspection under the liquor laws dealing with a long regulated and supervised industry are at issue.
[17] See footnote 10, supra.
[18] Fla. Stat. § 509.032(2), F.S.A. See In Re Smith, 74 So.2d 353 (Fla. 1954), and In Re Advisory Opinion to the Governor, 63 So.2d 321 (Fla. 1953).
[19] Fla. Stat. § 381.482, F.S.A.
[20] Fla. Stat. § 372.76, F.S.A.
[21] Fla. Stat. § 210.10, F.S.A.
[22] Fla. Stat. §§ 561.07, 562.031 and 562.41, F.S.A. See City of Jacksonville v. Wilson, 157 Fla. 838, 27 So.2d 108 (Fla. 1946); Boynton v. State, 64 So.2d 536 (Fla. 1953); and State ex rel. Hoffman v. Vocelle, 159 Fla. 88, 31 So.2d 52 (Fla. 1947). Regulation and inspection pertaining to selling alcoholic beverages is properly categorized separately from regulation or ordinary trades, businesses and occupations, because of the long history of regulation and the injurious effect of the use of alcohol on the health and general welfare of the community. State ex rel. Hoffman v. Vocelle, supra.