PEARSON, Judge.
These appeals are from a single order entitled “Amended Summary Judgment and Order on Motion for Summary Judgment.” The appellants are the Central and Southern Florida Flood Control District,[1] the Tropical Audubon Society, Inc., and the Florida Audubon Society. The District was the defendant and the Societies were granted leave by the trial court to intervene as parties defendant. The result of the partial summary judgment appealed is that the District must provide the appellee, plaintiff Nat Ratner, with a means of access to his lands. The operative portion of the order is as follows:
“1. Plaintiff’s Motion for Partial Summary Judgment as to its demand that Defendant provide him with reasonable access to his property be and the same is hereby granted, and the Defendant is hereby directed to provide at its own expense and as quickly as possible, a means of access to the RATNER LAND, spanning Levee L-30 and L-30 Borrow Canal, such means to be sufficient to enable Plaintiff to engage in those activities which are specifically reserved to him *1057 in the EASEMENT DEEDS at such time as he may be authorized to exercise them in accordance with the provisions of said EASEMENT DEEDS. Plaintiff shall not be required to request or obtain a permit to make use of the RATNER LAND, or any part thereof, prior to, or as a condition precedent to, Defendant’s being required to fulfill its obligation to provide access to Plaintiff pursuant to this Judgment. The Court reserves and retains jurisdiction over this cause in order to determine the question of the adequacy of such access, if the parties hereto are unable to reach an amicable agreement as to the method and type of access to be provided by the Defendant and the time within which such access shall be provided, and to determine such other issues as may properly be brought before the Court.
“2. Defendant’s Motion for Summary Judgment as to the reversion of the easement is granted.”
During the latter part of 1950 and January, 1951, the Central and Southern Flood Control District entered into certain easement agreements or flood contracts with Ratner’s predecessors in title. At the time, the subject property had been platted. The easement agreements, prepared by the District, gave the District the right to construct, operate and maintain a project in the interest of flood control, reclamation and conservation on the lands owned in fee by the grantors. These Flood Easement Deeds provide that the District had the right, inter alia, to the:
“. . . use and easement in and to the lands hereinafter described for any and all purposes necessary to the construction, maintenance and operation of any project in the interest of flood control, reclamation, conservation and allied purposes now or that may hereafter be conducted by the Grantee herein, its successors [the South Florida Water Management District], or assigns, including the right to permanently or intermittently flood all or any part of the area covered hereby as a result of the said construction, maintenance, or operation, in carrying out the purposes and intents of the statutes of the State of Florida relating to Central and Southern Florida Flood Control District [now the South Florida Water Management District] presently existing or that may be enacted in the future pertaining thereto. Any part of the whole thereof of the right, privilege, use and easement herein granted may be assigned for the public purposes contemplated herein by the grantee [South Florida Water Management District] at its own option and sound discretion without approval of the grantor herein.”
The grantors retained substantial rights in and to their property which were enumerated in the documents:
“It is specifically understood and agreed that the foregoing grant of the uses, rights and privileges aforesaid shall in no wise prohibit or interfere with the right of the parties of the first part (the plaintiff’s predecessors in interest), their heirs, administrators, assigns or lessees, to: (a) lease or conduct operations on the premises herein described, for the exploration or drilling for, or the developing, producing, storing, or removing of oil, gas or other minerals in or under the aforesaid premises, (b) remove topsoil, muck, etc., from the surface, (c) make such further use as will not conflict with the purposes for which this grant is given.”
The foregoing provisions in each of the Easement Deeds are followed by the following reservation of rights to the grantor:
“To exercise these rights, [(a), (b) and (c) above], the Grantor (plaintiff’s predecessor in interest), their heirs, administrators, assigns or lessees, and agents and employees, shall have such right of ingress and egress to and from said lands as may be necessary.
“It being further specifically understood and agreed that the rights retained under the provisions of this paragraph shall be exercised by the Grantor, their heirs, administrators, assigns or lessees, subject to any reasonable rules and regulations which the Governing Board of Flood Con *1058 trol District may prescribe for the efficient maintenance and operation of a public project in the interest of flood control reclamation, conservation and allied purposes, but which shall permit the reserved rights to exercise so that oil, gas and minerals may be developed, extracted and removed from the District in accordance with sound engineering principles.”
Beginning in 1952, the District under its rights granted in the easement agreements constructed a system of levees and borrow canals which virtually surrounded the Rat-ner land. Levee 30 and Borrow Canal 30 physically separate the Ratner land from other lands to. the east and from Krome Avenue. Levee 30 has an average height of approximately thirteen feet above natural ground level and has a width of some seventy feet. The adjacent borrow canal is approximately eighty feet in width and twenty feet deep. The system of levees and canals in which the Ratner land is located is known as Conservation Area 3, which is divided into Areas 3A and 3B. Area 3B lies west of Levee 30 and is the site designated for the development of the South Florida Airport Site (Jetport).
In February and March, 1972, Ratner purchased the subject property. Prior to purchase, Ratner visited the property traveling over Levees 30 and 67A by car. Access across Levee 30 Borrow Canal was possible by existing culvert rock crossings spanning the canal located north and south of the Ratner property.
Shortly after Ratner’s purchase of the property, the District erected locked gates across the access points leading to the levees and crossings of canals. The District issued keys to the gates to those persons approved by the staff or governing board under “district policy.” Ratner applied for a key to the gates leading to the levees (30, 67-A and 67-C) to gain access to his land.' The District denied Ratner’s application for a key. Thereafter, Ratner appeared before the governing board and demanded the access to his lands which had been guaranteed in the easement agreements. Again, the District denied Ratner the right of access, although conceding that Ratner could, at his own expense, construct a bridge.
The trial judge made the following findings:
“6. Subsequent to the dates on which the EASEMENT DEEDS were executed, in approximately 1952, the Defendant commenced excavation work on the RAT-NER LAND, and on other lands contiguous and adjacent thereto. The result of the excavation work was the creation of a series of levees and canals including Levee L-30 and L-30 Borrow Canal. The levees and canals virtually surround the RATNER LAND.
“7. That proper demand for access to his property has been made by Plaintiff to Defendant; and that with regard to access the only issue to be determined by this Court is who is to bear the expense of overcoming the obstruction to access to the Ratner property resulting from the creation of Levee L-30 and L-30 Borrow Canal.
“8. The Affidavits of DALY and KATHRYN HIGHLEYMAN, Plaintiff’s predecessors in interest and the original Grantors of one of the Easement Deeds offered by the Plaintiff in support of his Motion for Summary Judgment reflects that it was the intention of the Grantors at the time the EASEMENT DEEDS were granted that if the Defendant ever built any canals and levees, or took any other action which would impede or interfere with the right of access which had been promised to the Grantors in the EASEMENT DEEDS, the Defendant would provide, at its own expense, a means of overcoming the obstacle to access which it had created, otherwise they would not have given the EASEMENT DEEDS to the Defendant. Under the express terms of the easement grants the benefits of the retained rights flow to the successors and assigns of the Grantors. Plaintiff is such a successor. This affidavit is unrefuted by the Defendant.
“9. The affidavit of the Plaintiff states that at the time he purchased the RATNER LAND he was aware of the *1059 language in the EASEMENT DEEDS which instruments were prepared by or on behalf of the Defendant, stating that the use of the easement granted therein would in no way prohibit or interfere with Plaintiff’s use of the land for the purposes stated in the Deeds and the language granting the right of ingress and egress to and from the property, and Plaintiff strongly relied on said language in determining to purchase the property. This statement under oath by Plaintiff is not refuted by the Defendant.”
At oral argument, it was suggested that the circuit court was without jurisdiction to enter the mandatory injunction order requiring the District to construct a bridge. See State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977). The record in this case does not support the assertion that administrative remedies were available and adequate.
The trial court stated in its findings (paragraph “7,” supra) that . . the only issue to be determined by this Court is who is to bear the expense of overcoming the obstruction to access . . The District has met this issue in its brief by a point maintaining that the proper construction of the instruments themselves makes it clear that the grantors and their successors (plaintiff Ratner) must bear the cost of exercising rights reserved to the servient estate. There is logic to this argument and it might well prevail in an ordinary case. The instant case is distinguished by the fact that the District has created the impediment to the exercise of the right reserved. We find no error upon the court’s decision that the District must pay for a reasonable exercise of the reserved rights.
The only remaining question is whether the circuit court lawfully required the District to construct a particular bridge for Mr. Ratner at a particular time and place. The circuit court having jurisdiction of the dispute and having determined that Mr. Ratner had a right of access for the purposes set forth in the reservation, had jurisdiction to proceed to a settlement of the controversy and to enforce its order. See City of Miami v. Keton, 115 So.2d 547 (Fla.1959). Nevertheless, it is apparent that the land owner is entitled to access but not to a particular bridge. He owns lands within the flood control areas which are not contiguous.
If Mr. Ratner is entitled to a bridge, does it follow that each of the other land owners in the flood control area is entitled to a bridge? If the question is answered in the affirmative, is Mr. Ratner entitled to a bridge for each area in which he has reserved rights? These questions arise from the appellee Societies’ brief, contending that summary judgment was not proper because there existed genuine questions of material fact. Affidavits submitted by the District claim that it is not necessary to provide the type of access sought by Rat-ner’s complaint and that access is possible without the bridge. It is pointed out that Mr. Ratner has not shown that he is in any way attempting to engage in any use which requires a particular access.
The objection is well taken. The complaint, in four counts, alleged that the District had failed “. . . to provide Plaintiff with a reasonable method of obtaining access to his property . . .” The prayer of Count 1 sought an order enjoining the District from interfering with the plaintiff’s right of ingress and egress to his land, and . requiring the Defendant to provide the Plaintiff with reasonable access . . [Emphasis supplied] Count 2 sought a rescission of the flood control contracts. Count 3 sought a declaration of a common law “way of necessity.” Count 4 sought a declaration that the Ratner lands were not within the “required area” and should be excluded from the flood control area. It is readily seen that the trial court has gone well beyond the relief requested. A review of the record convinces us that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, do not support the full extent of the relief granted. Cf. Wells v. Thomas, 89 So.2d 259 (Fla.1956).
*1060 We have considered the other points raised by the parties and hold that none presents reversible error.
We, therefore, affirm the judgment entered so far as it determines plaintiff’s rights to reasonable access, and the District’s obligation to provide that access. We reverse that portion of the judgment which requires the District to provide a bridge at a certain time and place. We remand the cause for further proceedings in accordance with the views herein expressed and with directions that the court consider the necessity for action by the District to provide access to all owners when it has been demonstrated to the court that there is a need for that access.
Affirmed in part, reversed in part and remanded with directions.

. Now known as the South Florida Water Management District.