375 So.2d 1077 (1979)
Constantino CASAL and Omar Garcia, Appellants,
v.
The STATE of Florida, Appellee.
No. 78-2129.
District Court of Appeal of Florida, Third District.
August 14, 1979.
Rehearing Denied November 6, 1979.
Arthur F. McCormick, South Miami, for appellants.
Jim Smith, Atty. Gen., and Susan C. Minor, Asst. Atty. Gen., for appellee.
Before HENDRY, KEHOE and SCHWARTZ, JJ.
*1078 SCHWARTZ, Judge.
The defendants appeal their convictions for possession of marijuana. The cannabis was found aboard a vessel, occupied by the defendants, which had been stopped by Florida Marine Patrol officers while it was under way in the Atlantic off Monroe County. The officers acknowledged that they had no suspicion, "founded" or otherwise,[1] that those aboard the boat were engaged in any unlawful activity; the stated basis of the stop and subsequent boarding of the vessel was instead simply to make a check of the vessel's registration papers. Both when the incident occurred and when the case, including the defendants' motion to suppress the marijuana, was heard below, the prevailing law was that such a stop was constitutionally permissible. See Hill v. State, 238 So.2d 608 (Fla. 1970). Indeed, this court specifically so held in Miranda v. State, 354 So.2d 411 (Fla. 3d DCA 1978), cert. denied, 364 So.2d 888 (Fla. 1978), which applied the cases permitting "law enforcement officers to stop an automobile for the purpose of making a driver's license or car registration check." 354 So.2d at 413-414.
During the pendency of this appeal, however, the Supreme Court of the United States definitively ruled to the contrary. In Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979), it was held:
[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.
As the Hill and Miranda cases themselves demonstrate, there is no basis for distinguishing between automobiles and boats in applying the Fourth Amendment's proscription of unreasonable searches and seizures. Since this is true, and since none of the exceptions stated in the Prouse decision are applicable here,[2] we conclude, as did the court in Keenan v. State, 372 So.2d 1012 (Fla. 1st DCA 1979), that Prouse requires the conclusions that the stop was improper, and that the motion to suppress the contraband which was seized as a result of the stop should therefore have been granted.[3]
*1079 The judgments under review are reversed and the cause remanded with directions to discharge the defendants.
Reversed and remanded.
NOTES
[1] See, e.g., State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978)
[2] Compare Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 835 (Fla. 1978), where an expired commercial registration certificate was visible to the Marine Patrol officer who "stopped" the boat.
[3] This result is not contrary to Michigan v. DeFillippo, ___ U.S. ___, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) which upheld the seizure of contraband incident to an arrest for the violation of an ordinance declared unconstitutional only afterwards. Unlike Hill v. State, supra, there seems to be no Florida statute, as opposed to existing judicial interpretations of the effect of the Fourth Amendment, which purports to authorize the unconstitutional practice of stopping a vessel merely to make a random check of its registration certificate. Compare the provision involved in Hill, Section 370.021(5), Fla. Stat. (1967) (permitting stop to ascertain whether shrimping permit was on board) with Section 371.051(5), Fla. Stat. (1975) (requiring that registration certificate be available for inspection but giving no authority to stop). Even if there were such a statute, it would clearly be invalidated by Prouse. The DeFillippo opinion distinguishes such a situation from the DeFillippo case itself, stating at ____, 99 S.Ct. at 2633:

We have held that the exclusionary rule required suppression of evidence obtained in searches carried out pursuant to statutes, not previously declared unconstitutional, which purported to authorize the searches in question without probable cause and without a valid warrant. See, e.g., Torres v. Puerto Rico, ___ U.S. ___, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Our holding today is not inconsistent with these decisions; the statutes involved in those cases bore a different relationship to the challenged searches than did the Detroit ordinance to respondent's arrest and search.
Those decisions involved statutes which, by their own terms, authorized searches under circumstances which did not satisfy the traditional warrant and probable cause requirements of the Fourth Amendment.
.....
In contrast, the ordinance here declared it a misdemeanor for one stopped for `investigation' to `refuse to identify himself'; it did not directly authorize the arrest or search. Once respondent refused to identify himself as the presumptively valid ordinance required, the officer had probable cause to believe respondent was committing an offense in his presence and Michigan's general arrest statute... authorized the arrest of respondent, independent of the ordinance. The search which followed was valid because it was incidental to the arrest. The ordinance is relevant to the validity of that arrest and search only as it pertains to the `facts and circumstances' we hold constituted probable cause for arrest.