410 So.2d 152 (1982)
STATE of Florida, Petitioner,
v.
Constantino CASAL and Omar Garcia, Respondents.
No. 58192.
Supreme Court of Florida.
January 14, 1982.
Rehearing Denied March 15, 1982.
*153 Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., Miami, for petitioner.
Arthur F. McCormick, South Miami, for respondents.
BOYD, Justice.
This cause is before the Court on petition for certiorari to review the decision in Casal v. State, 375 So.2d 1077 (Fla. 3d DCA 1979). We have jurisdiction by virtue of conflict with Hill v. State, 238 So.2d 608 (Fla. 1970) and Miranda v. State, 354 So.2d 411 (Fla. 3d DCA), cert. denied, 364 So.2d 888 (Fla. 1978). Art. V, § 3(b)(3), Fla. Const. (1972).
While patrolling the Atlantic side of the Florida Keys at night, Officers Walker and Soli of the Florida Marine Patrol saw a fishing vessel then being operated by the respondents. Although the Marine Patrol had received several complaints from local fishermen that their traps were being raided, the officers initially had no suspicion that the operators of the vessel were engaged in illegal activity. Nevertheless, they pulled alongside the vessel and asked the captain to cut his engines. They then asked to see the boat's registration certificate which is legally required to be on board. See § 371.051(5), Fla. Stat. (1977). The captain Omar Garcia produced a tax receipt and some other documents but could not locate the registration certificate. Because the boats were banging alongside each other, Officer Soli asked permission to board the vessel. The respondents assisted her on board.
Upon boarding Officer Soli accompanied the respondents to the cabin to help look for the registration certificate. She testified that the respondents seemed agitated and apprehensive insofar as they were looking at each other a lot. She then asked to look in their icebox. After being told that would be fine she opened the icebox and saw some rotten food but no ice. This seemed strange to her since the captain had earlier said that they were on their way to Cay Sal to go fishing. She reported this finding to Officer Walker who had maneuvered the Marine Patrol vessel a few feet away to keep it from bumping into respondents' vessel. Officer Soli then asked to look in the forward hatch. Captain Garcia asked if she had a search warrant. Overhearing this exchange Officer Walker told Garcia that they did not need a search warrant since they were not conducting a search and that he was under arrest for not having a boat registration certificate on board. Garcia then said there was no need to go further and that the boat was loaded with grass. Officer Walker called respondents over to the side of the boat and after advising them of their Miranda rights asked them to confirm what was just said by opening the front hatch for Officer Soli's inspection. When they did so she discovered several bales of marijuana.
Respondents were taken into custody and charged with violating sections 893.03(1)(c) and 893.13(1)(a), Florida Statutes (1977). Before trial they moved to suppress the evidence on the basis that the search was illegal since the officers had neither probable cause to stop the vessel nor, having stopped the vessel, probable cause to search it. The trial court denied the motion, and *154 after trial respondents were convicted. On appeal the district court reversed on the basis of the United States Supreme Court decision in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), which had been handed down in the interim. In that case, after balancing the state's interest in promoting public safety on its roads against the citizens' interest to be free from government intrusion, the Supreme Court held that a police officer's completely random stop of an automobile to check the driver's license and car registration was an unconstitutional seizure under the Fourth Amendment. The district court reasoned that the Marine Patrol's stopping respondents' vessel was likewise unconstitutional since there was "no basis for distinguishing between automobiles and boats in applying the Fourth Amendment's proscription of unreasonable searches and seizures." 375 So.2d at 1078. Since we find there is a distinction substantial enough to tip the balance in favor of the state's legitimate interest, we disapprove that portion of the district court's opinion. Since we conclude that there was no probable cause to search the boat, however, we approve the district court's decision that the evidence should have been suppressed.
First we shall consider what are the state's interests. One main interest is promoting maritime safety. All motorboats must contain certain safety equipment and lighting devices. § 371.57, Fla. Stat. (1977). In Prouse, the Supreme Court stated that the state of Delaware had several alternative methods of promoting public highway safety, including annual automobile inspections and frequent enforcement of traffic violations. These methods are not available to the Florida Marine Patrol. The main concern here that motorboats be safely equipped cannot be furthered by requiring periodic safety inspections. Unlike automobiles, the items of safety equipment required to be on boats, such as life jackets and fire extinguishers, are easily detachable. A periodic inspection could not insure that such equipment would be on board when the boat was being operated. Nor are such safety violations observable and therefore subject to as frequent enforcement as automobile violations.
The state also has a legitimate interest in regulating fishing within the state's waters. Hill v. State, 238 So.2d 608 (Fla. 1970). In Hill this Court held that requiring an applicant for a shrimping permit to give blanket permission to conservation officers to board his vessel at any time with or without cause did not violate the applicant's right to be free from unreasonable search or seizure under the state and federal constitutions. A distinction was made between boarding and searching or seizing. This Court found that permission to board was for the limited purpose of ascertaining whether the permit was being carried on board and that any further search or inspection could only be conducted if there were probable cause that a law was being violated. See also Tingley v. Brown, 380 So.2d 1289 (Fla. 1980). The decision suggests that boarding a vessel for the limited purpose of checking for a permit does not constitute a search or seizure.
Chapter 370, Florida Statutes (1977), regulates the taking of saltwater fish and the sizes and quantities of fish that may be taken. Its purpose is to conserve Florida's marine life which is valuable to the economy, Hill v. State, and to protect certain species from extinction. See §§ 370.114 and 370.12, Fla. Stat. (1977). Requiring boats which may be carrying such marine life to stop for inspection of valid permits is akin to requiring trucks capable of carrying agricultural products to stop at agricultural inspection stations. See Gluesenkamp v. State, 391 So.2d 192 (Fla. 1980); Stephenson v. Department of Agriculture and Consumer Services, 342 So.2d 60 (Fla. 1976).
Now we must consider the citizen's interest in freedom from this type of governmental intrusion. A citizen's expectation of privacy is diminished when participating in specific types of regulated activity. See United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (operating firearms store); Colonnade Catering *155 Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (operating liquor store). In Prouse the Supreme Court found that government regulation of automobiles did not reduce a person's expectation of privacy.
Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day travelling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in travelling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.
440 U.S. at 662-63, 99 S.Ct. at 1400-1401.
The same does not hold true for motorboat travel. It is not a pervasive or necessary mode of transportation for most people. There is not as great a sense of security and privacy when travelling in a boat as when travelling in an automobile. Thus subjecting boats to random spot checks for fishing permits or registration certificates does not seriously circumscribe the Fourth Amendment.
Finally, the Supreme Court in Prouse explicitly stated that its holding did not preclude the state of Delaware from developing a system of spot checks. The Court went so far as to suggest the possibility of setting up roadblocks where all traffic is stopped. 440 U.S. at 663, 99 S.Ct. at 1401. Cf. United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (checkpoint stops and questioning may be made in absence of any individualized suspicion).
We note that this less intrusive alternative is not available to the marine patrol. Boat travel is not limited by fixed roadways. Unlike an automobile, a boat at sea can travel in any direction. Even in harbors where there are channels which boats must follow, it would be impossible to establish a checkpoint on the water since boats cannot come to a complete stop and line up behind each other on the water as cars can on roads.
In sum we find that the state's interest in random stopping and brief detention of motorboats for the limited purpose of checking fishing permits, registration certificates and safety equipment outweighs a person's interest in being completely free from such limited intrusion. In light of the absence of less restrictive alternatives which would accomplish the state's goals, spot checks of motorboats are not unreasonable under the Fourth Amendment. The district court erred in holding that State marine officers must have probable cause to stop a vessel for the limited purposes discussed above.
We next consider an issue the district court did not need to reach. That is the question whether the marine patrol officers, having lawfully stopped respondents' vessel, had probable cause to search it. As we have held earlier, after the initial stopping and boarding a vessel the marine patrol must have probable cause before conducting any further search or inspection. Tingley v. Brown; Hill v. State. With respect to safety inspections, the legislature has decided that not even the initial boarding may be conducted without consent or probable cause. § 371.58, Fla. Stat. (1977).[1] In this case consent was freely given to board the vessel and to look in the icebox.
However, respondents did not consent to any further search, as was clearly indicated when they asked Officer Soli if she had a search warrant. Villari v. State, 372 So.2d 522 (Fla. 1st DCA 1979). Respondents' subsequently opening the forward hatch for Officer Soli did not constitute *156 consent since they were told that a search warrant was not needed. See Taylor v. State, 355 So.2d 180 (Fla. 3d DCA), cert. denied, 361 So.2d 835 (Fla. 1978).
Without consent, the officers were precluded from further searching the vessel unless they had probable cause to believe that a crime was being or was about to be committed. Tingley v. Brown. Probable cause cannot be based on mere suspicion. Bailey v. State, 319 So.2d 22 (Fla. 1975). There must be facts showing a probability of criminal activity. State v. Smith, 233 So.2d 396 (Fla. 1970). In this case the facts were insufficient to show that respondents were probably committing or about to commit a crime. That respondents could not produce a registration certificate and that, although they said they were going to the Bahamas, their icebox did not contain ice may have been suspicious circumstances but did not constitute probable cause. That respondents inquired about a search warrant is irrelevant in determining whether the officers had probable cause. Since the officers lacked probable cause, their search of the vessel was unreasonable and the evidence they obtained should have been suppressed.
We disapprove the district court's decision insofar as it held that the initial stop was unreasonable and required probable cause. However, since we hold that the subsequent search was unreasonable because it was not based on probable cause, we approve the district court's reversal of the conviction. In accordance with the mandate of the district court of appeal, this cause is remanded to the circuit court with directions to discharge the defendants.
It is so ordered.
SUNDBERG, C.J., and ADKINS and OVERTON, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree with the majority's holding that the stopping of the motorboat was not unreasonable under the fourth amendment. The State's interest in the brief stopping for the purpose of checking permits, registration certificates, and safety equipment outweighs defendants' interest in being free from this limited intrusion. The district court was therefore in error in holding that the state marine officers must have probable cause to stop a vessel for these limited purposes.
Unlike the majority, however, I would also hold that the search of the front hold of the boat was not unreasonable under the fourth amendment. Two distinct and well-established exceptions to the warrant requirement, the "Carroll" exception and the search-incident-to-arrest exception, apply here.
In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 880 (1925), the Supreme Court recognized that the warrantless search of a motorboat or ship based upon probable cause may be a reasonable search under the fourth amendment because of the exigent circumstances arising from the movability of the vessel. In that case, the Supreme Court distinguished between search of a fixed structure in respect of which a warrant may be obtained and search of a ship, motorboat, wagon, or automobile for contraband "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 153, 45 S.Ct. 280, 69 L.Ed. 880. Furthermore, the fact that the officers may be able to secure a vessel does not derogate their authority to search it under the Carroll exception. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
In the present case, I believe that probable cause and exigency exist and that the Carroll exception is applicable. Captain Garcia, shortly after having been arrested for failure to have a registration certificate on board, without any prompting by anyone *157 or without any questions being asked, told the officers that the boat was loaded with marijuana. At that time the officers clearly had probable cause to believe that the defendants' boat was carrying marijuana. The boat itself was fully mobile, and the question of whether it could have been secured is irrelevant. Chambers v. Maroney.
Completely independent of the Carroll exception, I believe the search of the hold was within the constitutionally permissible scope of the search-incident-to-arrest exception. In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court of the United States held that where there has been a lawful custodial arrest, the officers are justified in making a contemporaneous warrantless search of the arrested person in order to remove any weapons that the arrestee may seek to use in order to effect his escape or resist arrest and in order to seize any evidence on the arrestee's person to prevent its concealment or destruction. The court also held proper a contemporaneous search of the area immediately surrounding the arrestee for the same purposes. These searches may be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy the evidence since the potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable. The arresting officer is not required to calculate the probability that weapons or destructible evidence may be involved. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The fact of lawful arrest, alone, authorizes the warrantless search. Michigan v. DeFellippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).
Acknowledging the difficulty courts have encountered in respect to the proper scope of what is meant by the area within the immediate control of an arrestee, particularly in automobile cases, the Supreme Court of the United States in New York v. Belton, 449 U.S. 1109, 101 S.Ct. 917, 66 L.Ed.2d 838 (1981), held that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, incident to the arrest, contemporaneously search the passenger compartment of that automobile. This includes, explained the court, a search of any containers found within the passenger compartment whether the container is opened or closed. In Belton, the occupants of the car had been ordered to get out of the car and had been placed under arrest prior to the officer's searching of the passenger compartment.
In the present case, there is no question that the search was conducted immediately upon arrest of the defendants, and the hold of the boat was easily accessible to the defendants. It is not inconceivable that the defendants may have had weapons hidden in the hold or that armed accomplices could have been hiding there, merely waiting an opportunity to surprise the officers and to thwart the arrest of defendants. Likewise, it is not inconceivable that defendants could have quickly reached the hold and attempted to destroy the evidence by throwing it overboard.
Accordingly, I would hold that the stop and search and seizure were constitutional, and therefore I would quash the decision of the district court.
McDONALD, J., concurs.
NOTES
[1] 371.58 Safety inspections; qualified.  No officer shall board any vessel to make a safety inspection if the owner or operator is not aboard. When the owner or operator is aboard an officer may board a vessel with consent or when he has probable cause or knowledge to believe that a violation of a provision of this part has occurred or is occurring.