ERVIN, Judge.
Appellants were charged by information with possessing and importing methaqua-lone. They entered pleas of not guilty and subsequently filed motions to suppress the physical evidence taken from the boat they were using. After a hearing, the motion was denied. Appellants then changed their pleas to no contest on the possession charge, and the state nolle pressed the importation charge. Appellants properly preserved their right to appeal the convictions. We affirm.
On April 13, 1980, Marine Patrol Officers Cook and Whalen were in their office when they observed an 18-foot motor boat coming into the Carrabelle River at about four o’clock on a Sunday afternoon. The weather was bad, and the water was rough. Although the officers did not at that time see anything unusual about the boat, they decided to look further. By the time they got to the landing, the boat was on its trailer and had been pulled up away from the boat ramp, although it was still near the ramp. *376 Officer Cook asked appellants if they would like a safety inspection and was told by Michael Sherman that they did not have the boat registration certificate. Cook then said that he could conduct the inspection without a registration and asked Michael if he had any other identification. Michael did not respond, but produced his driver’s license. Cook testified that he assumed from Michael’s silence that he consented to the inspection. Officer Cook then boarded the vessel to check both for the registration certificate and to determine whether the equipment on board complied with the safety requirements of a boat its size. While doing so, he pulled back a canvas tarp that was covering the stern where he found a man lying on the seat beneath the canvas with a rifle in his hands. Next to the discovered passenger, he also saw some boxes and plastic garbage bags, and inside one of the bags he was able to see some clear, smaller plastic bags containing pills. At this point appellants and the third person were placed under arrest.
In denying the motion to suppress, the court stated:
A full consideration of the totality of the circumstances yields a firm conclusion that effective consent was given to the search of the small boat for the purpose of a safety inspection and that it was pursuant to such search that evidence of unlawful trafficking in controlled substances was revealed.
Although we observe that the evidence before the court was hardly substantial on the question of whether consent was given by Michael Sherman to Officer Cook to board the vessel, cf. Bailey v. State, 319 So.2d 22, 27 (Fla.1975), requiring that evidence of consent be clear and convincing, this is an issue we need not address because we find the evidence was supportive of the lower court’s ultimate determination that the search was legal. The officers unquestionably were authorized by Section 371.58, Florida Statutes (1979),[1] to board the motor boat once they had probable cause to believe that a violation of Chapter 371 had occurred. We consider that the marine patrol officers clearly possessed such belief since neither of the two appellants were able to produce the certificate of registration generally required of all motorboats using the waters of this state, see Sections 371.041 and 371.051(4), Florida Statutes (1979), or give a reason why the boat was exempt from the numbering provisions of Chapter 371. See Section 371.131.
We find nothing in State v. Casal, 410 So.2d 152 (Fla.1982), contrary to our disposition of this case. Although Casal reversed a search on the ground that it found the officers did not have evidence sufficient to give them probable cause to believe contraband was on board the vessel, the facts in Casal are clearly distinguishable from those here. In Casal, after the officers had lawfully boarded the vessel pursuant to consent from its operator, they conducted a search — not “for the limited purpose of checking fishing permits, registration certificates and safety equipment,” Casal, at 155, but expanded the search for the purpose of determining whether the boat carried marijuana, which Casal decided was conducted with neither consent nor probable cause. Although, as stated, the officers in Casal were given consent to board, Casal implicitly recognizes that even in the absence of consent, probable cause to board would exist if the operator was unable to display a certificate of registration: “[T]he state’s interest in random stopping and brief detention of motor boats for the limited purpose of cheeking fishing permits, registration certificates and safety equipment outweighs a person’s interest in being completely free from such limited intrusion.” 410 So.2d at 155. Casal therefore indicates that an inspection of a boat, limited to the *377 purposes specified in Chapter 371, is not an unreasonable search and, therefore, does not contravene the provisions of the Fourth Amendment.
We consider that Section 371.58, Florida Statutes (1979), is a legislative recognition of a lesser standard of probable cause to search than that required in criminal cases. The United States Supreme Court has long countenanced varied standards of probable cause by weighing the need for the intrusion against the scope and goals of the intrusion. See Camara v. Municipal Court, 387 U.S. 523, 525, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). As noted in Marshall v. Barlow’s, Inc., 437 U.S. 307, 308, 320, 98 S.Ct. 1816, 1818, 1824, 56 L.Ed.2d 305 (1978): “Probable cause in the criminal law sense is not required” in instances of an intrusion by a governmental employee for reasons other than a traditional police search for contraband or evidence of a crime. Barlow’s, Inc. involved an inspector working for the U. S. Occupational Safety and Health Administration (OSHA) who sought to inspect an electrical and plumbing installation business for compliance with certain safety requirements. The Court observed that for the purposes of an administrative search, probable cause “may be based not only on specific evidence of an existing violation but also on a showing that ‘reasonable legislative or administrative standards ... are satisfied ....’” 436 U.S. at 320, 98 S.Ct. at 1824 (footnote omitted). Thus, if such standards are clearly defined, warrantless searches may be sustained in furtherance of a regulatory scheme, and the owner of property so regulated “cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.” Donovan v. Dewey, 452 U.S. 594, 601, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262, 270 (1981).
The theory for permitting a lessened standard of probable cause for the purposes specified under Chapter 371 is somewhat analogous to border searches. Stops and searches conducted in a maritime locale are viewed from a special perspective, United States v. Williams, 617 F.2d 1063 (5th Cir. 1980), and those who venture on the seas are presumed to do so cognizant of the myriad number of regulations designed to promote their safe passage. United States v. Whitmire, 595 F.2d 1303 (5th Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). Customs officials have been granted broad statutory authority to board vessels and conduct inspections. See United States v. Freeman, 579 F.2d 942 (5th Cir. 1978), and 19 U.S.C. § 1581(a). As a result, one’s reasonable expectation of privacy is often less aboard a vessel than on land. United States v. Whitmire, 595 F.2d at 1313; United States v. Ortega, 644 F.2d 512, 514 (5th Cir. 1981).
Once having lawfully boarded the boat, and while conducting an inspection for the limited purposes authorized under Chapter 371, Florida Statutes (1979), Officer Cook saw in plain view methaqualone tablets, which he was then empowered to seize. Plain view is the type of situation, described in Ensor v. State, 403 So.2d 349, 352 (Fla.1981), in which an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband within the area. The doctrine requires the existence of two discrete factors: (1) the officer’s presence within the constitutionally protected area must have come about through a prior valid intrusion, and (2) the officer’s observations must come about through inadvertence rather than deliberation.
Both factors are satisfied in the instant case. Officer Cook was legally on board the vessel because the operator had failed to produce the required registration certificate; he was legally conducting a search of the vessel, restricted in scope to the purposes delineated in Chapter 371, and while doing so, inadvertently observed the contraband — unlike the situation that occurred in Casal. Compare Albo v. State, 379 So.2d 648 (Fla.1980).
AFFIRMED.
SHIVERS, J., concurs.
WENTWORTH, J., dissents.

. Section 371.58, Florida Statutes (1979) (now Section 327.56, Florida Statutes (1981)), provides:
No officer shall board any vessel to make a safety inspection if the owner or operator is not aboard. When the owner or operator is aboard an officer may board a vessel with consent or when he has probable cause or knowledge to believe that a violation of a provision of this part has occurred or is occurring.