Dear Mr. Rice:
This opinion is in response to your question asking:
 Is it lawful for a member of the Missouri State Water Patrol to stop a vessel on the waters of this state for the purpose of checking proper registration and safety equipment as required by Chapter 306, RSMo, without "probable cause"?
 I. Statutory Authority
Section 306.015, RSMo Supp. 1985 (effective April 1, 1986), requires the owners of "vessels", as defined in Section306.010(5), RSMo Supp. 1984, kept, acquired, or brought into this state to cause them to be registered with the Missouri Department of Revenue, which issues certificates of title therefor. Section306.020, RSMo 1978, requires vessels to be numbered, with certain exemptions found in Section 306.080, RSMo 1978, and Section306.080, RSMo Supp. 1985 (effective April 1, 1986). Section306.030.1, RSMo 1978, and Section 306.030.1, RSMo Supp. 1985 (effective April 1, 1986), require owners of vessels required to have numbers to file an application for a certificate of title, which is issued by the Missouri Department of Revenue.
Effective April 1, 1986, Section 306.030.1, RSMo Supp. 1985, provides that:
 The application shall include a provision stating that the applicant will consent to any inspection necessary to determine compliance with the provisions of this chapter and shall be signed by the owner of the vessel . . .[1]
Section 306.100, RSMo 1978, and Section 306.100, RSMo Supp. 1985 (effective April 1, 1986) establish certain safety equipment requirements for vessels.
Section 306.210, RSMo 1978, makes violations of Sections306.030 and 306.100 misdemeanors. Section 306.165, RSMo 1978, and Section 306.165, RSMo Supp. 1985 (effective April 1, 1986), grant water patrolmen all the powers of peace officers to enforce the laws of the State of Missouri in certain designated areas. Section 306.200, RSMo 1978, grants all peace officers, including water patrolmen, the authority to enforce the provisions of Chapter 306, RSMo, and to arrest violators thereof.
Section 306.165, RSMo 1978, provides in part: "Each water patrolman may board any boat during daylight hours for the purpose of making any inspection necessary to determine compliance with the provisions of this chapter." (Emphasis added.) In Opinion No. 92-84, copy enclosed, this office concluded that the above-quoted statute did not grant water patrolmen the authority to board vessels during night-time hours.
Section 306.165, RSMo Supp. 1985 (effective April 1, 1986), provides in part: "Each water patrolman may board any watercraft at any time, with probable cause, for the purpose of making any inspection necessary to determine compliance with the provisions of this chapter." (Emphasis added.) We conclude that the above-quoted language only authorizes water patrolmen to board
vessels with probable cause.
Your question asks about the authority of water patrolmen tostop vessels without probable cause. We conclude that water patrolmen, as peace officers, have the implied statutory authority to stop vessels without probable cause, as an incident to their power to enforce the provisions of Chapter 306, RSMo; provided, that the limitations in Sections 306.165, RSMo 1978, and 306.165, RSMo Supp. 1985 (effective April 1, 1986), may not be exceeded.
 II. Constitutional Authority
In Opinion No. 124, Wilson, 1979, copy enclosed, this office opined that water patrolmen may not randomly and arbitrarily stop watercraft without reasonable suspicion to inspect the boat for compliance with the provisions of Chapter 306, RSMo. Our 1979 opinion was based on Delaware v. Prouse, 440 U.S. 648 (1979). InProuse the Court held that random and arbitrary stops of motor vehicles in order to check the driver's license and registration papers of the vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution. In making this determination the Court balanced the state's interest in promoting the safe operation of motor vehicles by ensuring that such are operated by qualified drivers and that the vehicles have undergone an annual safety inspection evidenced by the vehicle registration against the intrusion caused by stopping drivers of automobiles when there is no observable indication that the vehicle is unsafe. The Court found that the marginal contribution to roadway safety caused by the random stops was outweighed by the unbridled discretionary intrusion upon the traveling public's expectation of privacy caused by such stops. The state's interest in promoting vehicle safety could be obtained more productively through alternative methods of enforcement,e.g., the fixed check point or roadblock.
At the time our 1979 opinion was rendered, we found no basis to distinguish boats from automobiles and concluded that Prouse
prohibited water patrolmen from conducting random stops of boats in order to check registration papers and safety equipment.
In United States v. Villamonte-Marquez, 462 U.S. 579 (1983),on remand, 714 F.2d 428 (5th Cir. 1983), the issue was "whether the Fourth Amendment is offended when customs officials, acting pursuant to this statute and without any suspicion of wrongdoing, board for inspection of documents a vessel that is located in waters providing ready access to the open sea."462 U.S. at 580-581.
The Court stated:
 Our focus in this area of Fourth Amendment law has been on the question of the "reasonableness" of the type of governmental intrusion involved. "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Delaware v. Prouse, supra, at 654. See also Camara v. Municipal Court, 387 U.S. 523 (1967); Terry v. Ohio, 392 U.S. 1 (1968); Cady v. Dombrowski, 413 U.S. 433 (1973); United States v. Brignoni-Ponce, supra; United States v. Martinez-Fuerte, supra. It seems clear that if the customs officers in this case had stopped an automobile on a public highway near the border, rather than a vessel in a ship channel, the stop would have run afoul of the Fourth Amendment because of the absence of articulable suspicion. See United States v. Brignoni-Ponce, supra. But under the overarching principle of "reasonableness" embodied in the Fourth Amendment, we think that the important factual differences between vessels located in waters offering ready access to the open sea and automobiles on principal thoroughfares in the border area are sufficient to require a different result here.
462 U.S. at 588.
The Court distinguished vessels having access to the open seas from automobiles on the basis of two points: (1) that fixed checkpoints do not work with vessels with access to the open seas, and (2) that the documentation requirements for ocean-going vessels are more complex.
Vessels with access to the open seas may float around any checkpoint established; thus, fixed checkpoints do not work with respect to such vessels. The Court did note that "maritime commerce on the inland waters of the United States may funnel into rivers, canals, and the like, which are more analogous to roads and make a `roadblock' approach more feasible, . . .".462 U.S. at 589. Missouri's waters are generally inland waters that may funnel into rivers, canals, etc., and which may be subject to "roadblock"; however, there may be areas where the "roadblock" approach is impractical. In these areas, random stops may be appropriate.
The second factor the Court looked to is the complexity of ocean-going vessel registration. There are generally no outwardly observable license plates or stickers on ocean-going vessels as there generally are on automobiles. The panoply of statutes and regulations governing maritime documentation was also found to be more extensive and complex than that required by automobiles. Missouri's regulations of vessels require the vessel's identifying number to be displayed on each side of the bow of the vessel, Section 306.020, RSMo 1978, and no other number may be painted, attached, or otherwise displayed on either side of the bow of the motorboat, Section 306.040, RSMo 1978. We believe this is similar to the license plates or stickers on automobiles, even though these markings may be placed on the boat by the owner. See Villamonte-Marquez, 462 U.S. at 590. We also believe that Missouri's regulations relating to vessel documentation are substantially less complex than those applicable to ocean-going vessels, which may be of foreign registry. However, if the water patrolmen come across vessels of foreign registry, random stops of such to inspect their relatively complex registration papers may be in order.
Further guidance is given in State v. Casal, 410 So.2d 152
(Fla. 1982), on remand, Casal v. State, 411 So.2d 1040 (Fla.App. 1982), cert. granted, Florida v. Casal, 459 U.S. 821 (1982),cert. dismissed as improvidently granted it appearing that thejudgment below rested on independent and adequate state grounds,462 U.S. 637 (1983). In that case the Supreme Court of Florida weighed the state's interest in promoting boat safety against the intrusion caused by a "spot check" to inspect a registration certificate and found that the state's interest in promoting boat safety outweighed the intrusion caused by a spot check. Mainly, the court in Casal relied upon the inadequacy of fixed check points in policing boats and the fact that most maritime safety equipment, e.g., life jackets and fire extinguishers, are easily detachable, making periodic inspections inadequate to insure that such equipment is on board while the boat is in operation. Thus the Supreme Court of Florida held that state maritime officers need not have probable cause to stop a vessel for the limited purpose of checking fishing permits, registration certificates, and safety equipment. However, the court found that the subsequent search of the vessel in Casal was unreasonable and ordered the evidence suppressed.
In the order dismissing the writ of certiorari previously granted in Casal, which was handed down on the same date the Court handed down Villamonte-Marquez, 462 U.S. at 637, Chief Justice Burger indicated that the Fourth Amendment of the United States Constitution would not require the suppression of the evidence in Casal and pointed to independent state law that may have required such suppression, including a Florida statute permitting state marine patrol officers to board vessels for safety inspections only if there is consent or probable cause to believe a crime is being committed. Cf. Section 306.165, RSMo Supp. 1985 (effective April 1, 1986).
In balancing the State of Missouri's interest in promoting the safe operation of vessels and enforcing its laws upon the waters of the State of Missouri against the intrusion caused by random stops of vessels for the purpose of inspecting safety equipment and registration papers, we find that the State of Missouri's interests outweigh the damage to privacy caused by such random stops. In particular, we note that fixed check points are often not adequate with regard to vessels, because there often are not "channels" or roads on the water. We also note that certain of Missouri's safety equipment requirements, such as personal flotation devices, fire extinguishers and sounding devices, Sections 306.100.7-.14, RSMo 1978, and Section306.100.7-.14, RSMo Supp. 1985 (effective April 1, 1986), may only be adequately enforced while the vessel is being operated.
Accordingly, we find nothing in the Fourth Amendment to the United States Constitution, as is incorporated into theFourteenth Amendment thereof, prohibiting water patrolmen from randomly stopping vessels for the purpose of inspecting safety equipment and registration papers. Anything to the contrary in Opinion No. 124, Wilson, 1979, should be disregarded, and that opinion is hereby withdrawn. As the search and seizure provision of the Missouri Constitution, Article I, Section 15, Missouri Constitution, is coextensive with the United States Constitution,see State v. Jefferson, 391 S.W.2d 885, 888 (Mo. 1965), we find it unnecessary to specifically examine Missouri law on this question.
CONCLUSION
It is the opinion of this office that members of the Missouri State Water Patrol may randomly stop vessels on the waters of the State of Missouri for the purpose of checking registration papers and safety equipment without probable cause, except (1) prior to April 1, 1986, water patrolmen may not board vessels for inspection purposes during night-time hours, and (2) on or after April 1, 1986, water patrolmen may not board vessels for inspection purposes without probable cause to believe a provision of Chapter 306, RSMo, is being violated.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosures:
 Opinion No. 92-84 Opinion No. 124, Wilson, 1979
[1] In order for the consent provision in the application to be effective as a truly voluntary consent, it may be advisable for the Department of Public Safety to interpret this language as allowing one to refuse to consent to the inspection and also obtain registration papers.