PER CURIAM.
The State of Florida brings this appeal pursuant to the county court’s certification of the following questions as ones of great public importance pursuant to Florida Rule of Appellate Procedure 9.160:
WHETHER THE AUTHORITY FOR SALTWATER PRODUCTS INSPECTIONS UNDER SECTION 370.021(5), FLA.STAT., IS EXCEEDED BY AN OFFICIAL INSPECTION OF A VESSEL’S STRUCTURE, INCLUDING CROSS-BOARDS, CENTERBOARDS, BULK *964 HEADS, FLOORING, AND SAFETY EQUIPMENT; AND
WHETHER THE AUTHORITY FOR SALTWATER PRODUCTS SEARCHES UNDER SECTION 370.021(5)(B), FLA. STAT., IS EXCEEDED WHEN EFFECTED THROUGH AN OYSTER MONITORING STATION ESTABLISHED BY RULE 46-27.009, FLA.ADMIN. CODE, BUT OPERATED WITHOUT UNIFORM WRITTEN GUIDELINES WHICH ESTABLISH A PLAN WITH SPECIFIC NEUTRAL CRITERIA FOR THE INSPECTION OF OYSTER CARGOS.
On September 19, 1989, around 4:40 p.m., Greg Starkey, Sonya Murray, and James Smith were returning from harvesting oysters in the public beds in Apalachicola Bay in an open twenty four foot oyster boat. Pursuant to Florida Administrative Code Rule 46-27.009, all commercial oyster harvesters in Apalachicola Bay are required to stop at an oyster monitoring station in the Bay before leaving the waters in order to have their oysters inspected for cleanliness, size, and bag limit. There are two oyster monitoring barges in the Bay, the Bravo barge, which is closest to the Cat Point area, and the Alpha barge. Officer King of the Florida Marine Patrol saw Starkey in a boat that was proceeding to pass Bravo barge in the direction of Alpha barge. When notified by the barge captain, Juanita Stone, that Alpha barge was closed for the day, Officer King hailed Starkey and requested that he come to Bravo barge to have his oysters checked. When the boat arrived at the barge, the occupants were asked how many bags of oysters they had, and the response was five.
At the barge, Officer Messer boarded the boat for a quality control inspection and to look in the bags of oysters. According to Officer Messer, during a quality control inspection he checks the crossboards, centerboard, bulkhead, boat registration, salt water products license, and oyster harvesting permits. No registration was produced. While on board the vessel, Officer Messer saw two additional bags of oysters under the cull board. Officer Messer asked Starkey if there were only five bags of oysters on the boat. When Starkey replied in the affirmative, Officer Messer asked what was under the cull board. Starkey replied, “Oysters; you know what they are.” The two bags were pulled out. An examination of one bag revealed that 85 percent of the oysters were undersized. Two of the undersize oysters were seized as evidence.
As a result, Starkey was cited for possession of undersize oysters, failure to pass through a check station, and possession of unculled oysters. Starkey filed a motion to suppress the two undersize oysters. After a hearing the county court granted the motion to suppress. In the order granting the motion, the court determined that the motion
must be granted because there is no written set of uniform guidelines to minimize the degree of intrusion or to curb the discretion of government agents in the conduct of inspections under Section 46-27.009, FAC, and the search of Defendant’s vessel exceeded the statutory scope established in Section 370.021(5), FS.
The state filed a notice of appeal to the circuit court, but later asked the circuit court to relinquish jurisdiction to the county court so that the county court could consider the state’s request to certify a question of great public importance. The circuit court granted the motion and relinquished jurisdiction for 90 days to the county court. The county court certified the aforementioned questions as ones of great public importance. We accepted jurisdiction.
Upon consideration, we have determined that resolution of the certified questions is not necessary to pass on the legality of the search and seizure which occurred in this case¡ As to the first certified question, both the appellant and appellee urge that it should not be answered because it is not one of great public importance. Accordingly, we decline to answer the questions as phrased. We have no reason to believe, given the limited applicability of Rule 46- *965 27.009[1] that the perceived “lack of uniform written guidelines” has led to an impermissible degree of intrusion.
The undersize oysters were properly seized by Officer Messer. The Marine Patrol had the authority to board the boat to check for undersize oysters pursuant to Rule 46-27.009(2)(a)[2] and section 370.-021(5)(b), Florida Statutes.[3] In addition, Starkey had little expectation of privacy in the boat, particularly as regarded his oyster catch.[4] A person’s expectation of privacy in a motorboat is less than the same expectation of privacy in an automobile. State v. Casal, 410 So.2d 152, 155 (Fla.1982). Requiring the oyster harvesters to offload their catch onto the barge would be a greater intrusion.
Since the marine patrol had the authority to board the boat, Officer Messer correctly seized the two additional bags of oysters that were in plain view under the cull board.
The order granting the motion to suppress is reversed.
ZEHMER, WOLF and KAHN, JJ., concur.

, Florida Administrative Code Rule 46-27.009 which is limited to Apalachicola Bay provides in part:
(1) In order to monitor the Bay’s capacity to sustain limited oyster harvesting, the Department shall establish and operate monitoring stations at locations and times to be announced according to current procedures followed when announcing the Bay is closed for health reasons.
(2)(a) All persons who harvest oysters from the Bay in any quantity for commercial purposes shall before leaving the waters of the Bay, pass through a monitoring station. At the station the Department shall inspect the oysters taken and verify that the oysters are clean, and meet the bag limit, and minimum size and tolerance requirements of these rules. If the oysters taken do so, the Department shall issue an oyster tag, which shall be immediately affixed to the bag containing the oysters. The tags shall be imprinted with a Department seal and a serial number that shall also be logged at the time of issuance. The tag shall remain affixed to the bag until the bag is delivered to a certified oyster house.

. "At the station the Department shall inspect the oysters taken and verify that the oysters are clean, and meet the bag limit, and minimum size and tolerance requirements of these rules.”

.
[A] law enforcement officer of the department who has probable cause to believe that the vessel has been used for fishing prior to the inspection shall have full authority to open and inspect all containers or areas where saltwater products are normally kept aboard vessels, while such vessels are on the water, such as refrigerated or iced locations, coolers, fish boxes, and bait wells, but specifically excluding such containers that are located in sleeping or living areas of the vessel.

. The occupation of shellfishing is "pervasively” regulated in Florida. State v. Leavitts, 599 So.2d 1326, 1332 (Fla.1st DCA 1992).