**Dennis NELSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 97–230.

Supreme Court of Wyoming.

June 17, 1998.

Robert T. Moxley of Gage & Moxley, Cheyenne, for Appellant(Defendant).

William U. Hill, Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Deputy Attorney General, for Appellee(Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

The Wyoming Legislature has provided that state game and fish law enforcement personnel are "peace officers" "while responding to requests to assist other peace officers performing their official duties." WYO. STAT. § 7–2–101(a)(iv)(C) (1997). The primary question in this appeal is whether park rangers at Glendo State Park, who concededly are peace officers, may in advance call upon state game and fish wardens for assistance in handling the large crowd of visitors who enjoy the recreational opportunities at the Park during a summer holiday period. The district court held that the assistance request agreement made in advance and in anticipation of the need for assistance over the July 4th holiday period was within the above-quoted language of the statute. We agree, and we affirm the conviction of appellant Dennis Nelson, entered upon his conditional plea of guilty to one misdemeanor count of interfering with a peace officer while engaged in the lawful performance of his duties in violation of WYO. STAT. § 6–5–204(a).

## ISSUES

Nelson and the State present these issues for our review:

I. Does a game warden have the right to enforce the general misdemeanor statutes by detaining a citizen, for investi-

gation by peace officers later called to the scene, when the "crime" is unrelated to game and fish or boating?

II. Does the "peace officer" statute authorize a prospective, blanket "request to assist," whereby any law enforcement agency may informally deputize officers of limited enforcement authority to enforce the general statutes?

III. Does a game warden have a special power which suspends constitutional strictures and allows him to randomly stop, detain, and search boats, in the absence of reasonable suspicion?

## FACTS

Glendo State Park officials anticipated between six thousand and eleven thousand people would be in the Park on the July 4th holiday in 1996. The Park had four rangers available for law enforcement with only two available during a given shift. The park rangers requested assistance in advance from Wyoming game and fish wardens. Game and fish wardens and park rangers met twice to review the assistance to be provided, once one week before the holiday and once on July 5, 1996. At those meetings it was agreed that the wardens would assist the park rangers by patrolling the park in conjunction with their game and fish duties. If a warden observed a violation of law that was within the jurisdiction of the park rangers, he was to contact a ranger and maintain the situation until the ranger arrived.

On July 7, 1996, during the busy Fourth of July holiday weekend at the Park, three game wardens on patrol observed Nelson with his family, crossing the lake in a boat, accompanied by a jet-ski carrying a man and a child. After seeing the jet-ski crisscrossing the boat's wake, the wardens stopped the jet-ski and asked its operator to proceed to shore. The jet-ski operator was given a warning for careless operation which could lead to personal injury. The wardens then decided to conduct a safety inspection of the boat operated by Nelson. Nelson refused to permit the inspection although his father produced registration papers and allowed the inspection. The wardens performed the safety inspection without issuing a citation and left the area in the wardens' boat. As the wardens left, Nelson stood on the shore, yelled obscenities at them and then turned and exposed his buttocks to them and in front of other people. The wardens returned to shore and attempted to detain Nelson until a park ranger arrived. During this detention, Nelson attempted to leave in his car; however, the wardens prevented this by standing in front of his car. Nelson then exited his car and kicked one of the wardens. The wardens drew their batons and ordered Nelson to remain in his car until park rangers arrived.

A park ranger and a sheriff's deputy arrived and arrested and charged Nelson with felony interference with a peace officer under WYO. STAT. § 6–5–204(b). Nelson filed motions to dismiss the charge on grounds that the initial boat safety inspection encounter was unlawful and that the wardens were not peace officers. The district court denied the motions. As part of a conditional plea agreement, the charge was reduced to a misdemeanor charge of interference with a peace officer under WYO. STAT. § 6–5–204(a). Nelson received a thirty day suspended jail sentence, was placed on probation for one year, and ordered to pay $100.00 to the Crime Victims Compensation Fund. This appeal followed.

## DISCUSSION

 In his first argument, Nelson claims that the trial court erred when it interpreted the "peace officer" statute to authorize the pivotal "cooperative law enforcement agreement" between the state park rangers and the game and fish wardens. The State contends that the district court correctly ruled that, under the circumstances of this case, the warden was a peace officer engaged in the lawful performance of his official duties when he was kicked by Nelson.

Wyoming Statute § 7–2–101(a)(iv)(C) (1997)[1] states:

1. The State tells us that while the court and parties of this case cited WYO. STAT. § 7–2–

**1014**

(a) As used in W.S. 7–2–101 through 7–2–105:

* * *

(iv) "Peace officer" means:

* * *

(C) Game and fish law enforcement personnel qualified pursuant to W.S. 9–1–701 through 9–1–707 and when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony, during the performance of their statutory duties, or while responding to requests to assist other peace officers performing their official duties;

* * * *

The parties do not dispute that the park rangers are peace officers. Nelson argues that an advance cooperative law agreement does not satisfy the statute as it is worded and that the request to assist under this definition of peace officer must occur after the requesting authority encounters a specific situation in which he needs help. The district court ruled that such a limitation is illogical because it makes no sense to permit assistance after the fact, but prohibit it when a peace officer knows he cannot handle all his duties and seeks help in advance to avoid problems.

■■■ If the statutory language is unambiguous, the court may not resort to application of rules of construction. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040, 1043 (Wyo.1993).

> In construing a statute, "the initial step in arriving at a correct interpretation . . . is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker Land & Cattle Co.,* 845 P.2d at 1042 (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). If the statute's language is clear and unambiguous, we apply its plain meaning and

need not consult the numerous rules of statutory construction.

*Witt v. State,* 892 P.2d 132, 137–38 (Wyo. 1995). A statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. *Allied–Signal, Inc. v. State Bd. of Equalization,* 813 P.2d 214, 219–20 (Wyo.1991). The statutory language here is not ambiguous and is to be given its plain meaning. We agree with the district court and the State that Nelson's argument incorrectly construes the language by reading into the statutory provision qualifications and conditions not textually expressed by the legislature, and his argument artificially constrains the statute's plain meaning. Accordingly, the warden was a peace officer at the time he was kicked by Nelson.

■■■ Nelson next argues that the charges should have been dismissed because the initial inspection encounter and the later encounter involving his detention on shore were unlawful. Although the State notes in passing that courts have upheld a state agent's brief stopping and detaining of motorboat operators, without probable cause or reasonable suspicion, for the limited purpose of checking fishing permits, registration certificates, or safety equipment,[2] the State principally relies upon the district court's reasoning that the first encounter had completely terminated by the time of the later arrest and was irrelevant to the incident that led to the charges.

Wyoming Statute § 6–5–204(b) (1997) states:

> A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

We agree with the district court that the statutory language requires that the legality of the officer's conduct be measured at the

101(a)(iv)(C) for the definition of game wardens as peace officers, Wyo. Stat. § 6–1–104(a)(vi)(C), applicable to Title 6 offenses, contains the same definition of game wardens as peace officers.

**2.** *See, e.g., Dalton v. State,* 216 Ga.App. 411, 454 S.E.2d 554 (1995), *cert. denied,* 516 U.S. 986, 116

S.Ct. 513, 133 L.Ed.2d 422 (1995); *State v. Casal,* 410 So.2d 152, 155 (Fla.1982), *cert. granted,* 459 U.S. 821, 103 S.Ct. 50, 74 L.Ed.2d 56 (1982), and *cert. dismissed,* 462 U.S. 637, 103 S.Ct. 3100, 77 L.Ed.2d 277 (1983) (lawful under Fourth Amendment).

time the injury occurs. The safety inspection encounter had terminated and is irrelevant to the charge arising from the second encounter.

The encounter on shore that led to Nelson's arrest was lawful because the warden was functioning as a peace officer when he initially detained Nelson for the arrival of park rangers. The warden was lawfully performing official duties as required by the statute when Nelson kicked him. We have said:

> In evaluating whether police-citizen encounters are constitutionally valid, we have identified three categories or tiers of interaction between police and citizen:
>
> ■ The most intrusive encounter, an arrest, requires justification by probable cause to believe that a person has committed or is committing a crime. [2] The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime. [3] The least intrusive police-citizen contact, a consensual encounter, involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning.

*Brown v. State*, 944 P.2d 1168, 1171 (Wyo. 1997) (quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994) (citations omitted)).

Nelson contends that he was arrested by the wardens because he was prevented from leaving the area in his car until the park ranger arrived and placed him under arrest. The wardens' initial detention of Nelson was based on their direct observation of him screaming, making obscene gestures and then exposing himself on the shore. This observation created a reasonable suspicion that Nelson was committing a crime, whether it was indecent exposure, disturbing the peace, or violation of a park regulation dealing with these topics, and justified an investigatory stop. The detention was within the parameters of the arrangement between park officials and the wardens until one of the wardens was kicked by Nelson and the wardens drew batons and ordered Nelson to remain in his car until park rangers arrived.

At that point, we agree that the wardens' detention of Nelson constituted an arrest; however, as we have already ruled, the wardens were peace officers and authorized to make the arrest.

> By statute, Wyoming has provided that a peace officer may arrest a person without a warrant when the officer has probable cause to believe that a felony has been committed and that the person to be arrested has committed it. WYO. STAT. § 7–2–102(b)(ii) (1995). We have frequently invoked our rule that probable cause to arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer together with facts and circumstances about which the officer has trustworthy information are sufficient to justify a reasonably cautious or prudent person in the belief that the person to be arrested has committed or is committing the offense.

*Carroll v. State*, 938 P.2d 848, 850 (Wyo.1997) (citing *Yung v. State*, 906 P.2d 1028, 1033 (Wyo.1995)). The wardens had probable cause to believe that Nelson's conduct constituted felony interference with a peace officer under WYO. STAT. § 6–5–204(b). The arrest was lawful.

## CONCLUSION

The advance cooperative law agreement between the game and fish wardens and the park rangers was valid and, under it, the wardens were peace officers as defined by the statute. The safety inspection encounter had terminated and is not relevant to determining whether the warden was acting lawfully. The on-shore encounter was a legal investigatory stop that resulted in a lawful arrest. The order of the district court is affirmed.